No. 35,868

EDWARD EGNATIC, by His Mother and Next Friend, SOPHIA EGNATIC, *Appellant,* v. N. J. WOLLARD, Public Administrator of Wyandotte County in the Matter of the Estate of Charles Yoda, and the Unknown Heirs, if any, of said Charles Yoda (also known as Karl Yoda), Deceased, *Appellee.*

(137 P. 2d 188)

844

*J. H. Brady* and *Wm. H. McCamish,* both of Kansas City, were on the briefs for the appellant.

*Elmer E. Martin,.* of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action commenced in the district court against the administrator of an intestate deceased person to exhibit and establish a demand against the estate of decedent, Charles Yoda, arising out of an oral contract alleged to have been made by such decedent with the plaintiff. The defendant's demurrer to the petition was sustained and the action dismissed by the trial court, from which judgment the plaintiff appeals.

Pertinent facts material to a proper determination of this appeal appearing from the pleadings and the record and admitted by all parties can be thus stated: Charles Yoda, a bachelor, died intestate on April 14, 1941, a resident of Wyandotte county, Kansas; N. J. Wollard, the then public administrator of Wyandotte county, was appointed as administrator of the decedent's estate by the probate judge of such county; on November 3, 1941, the plaintiff, who was a minor, filed an action by his mother and next friend in the district court of Wyandotte county against the administrator, in which he sought to recover a money judgment upon an alleged oral contract which he claimed was entered into with the decedent during his lifetime; N. J. Wollard died on or about August 15, 1942, and thereafter Elmer E. Martin was duly appointed by the probate court as administrator *de bonis non* of such estate; on December 2, 1942, this action was revived against Elmer E. Martin as administrator *de bonis non.*

Allegations of the petition with respect to execution and performance of the alleged contract in view of objections made to the sufficiency of the petition will, insofar as possible, be related in the language used by the plaintiff. They are in substance as follows: Sometime during the year 1930, or 1931, Charles Yoda entered into an oral contract with Stanley Egnatic and Sophia Egnatic, the

father and mother of the plaintiff, by the terms of which he agreed that if and when such persons would permit their son Edward, plaintiff herein, to be and become under his domain, rule and guidance, and be his companion and helpmate, he would, prior to his death, by will or otherwise, make arrangements for and execute whatever would be necessary and see to it that plaintiff would be and become his heir, as though and if plaintiff were his son; at such time and subsequently thereto Yoda stated that if and when Stanley and Sophia Egnatic would permit and allow their son to be, as it were, a son of Yoda he would give Edward an education and would pay for his education at college and in law; Stanley and Sophia Egnatic agreed to Yoda's proposals; pursuant to Yoda's statements and promises plaintiff was by his parents caused and permitted, after school hours, and Saturdays and Sundays and holidays, to go to the home of Yoda, who lived as a bachelor, and spent practically all of his spare time there; during the last three or four years of his life Yoda became ill and at his request Edward assisted him about his house, making beds, cleaning rooms, cutting the lawn, painting and repairing the home and other properties owned by him; during such period of time he looked after Yoda's welfare generally, performing such services as collecting his rents, taking him to and from his home, various places of business and entertainment, and doing any and all things required by his command and bidding; such services were performed by plaintiff at the command and request of his parents who had informed him of the promises and agreement of Yoda and in furtherance of and in compliance with the terms of the oral contract made and entered into between all of the parties.

The petition further alleged that notwithstanding the fact plaintiff for nine years had complied with all the demands, requests and obligations of Yoda, it was discovered after his death he had failed to carry out his promise and agreement to make arrangements by will or otherwise for the giving to the plaintiff of his share of the estate or make arrangements for the education of plaintiff in college and in law; that by reason of such failure to carry out the terms of his contract Yoda breached and violated the terms thereof, to plaintiff's damage in the sum of $10,000.

Although not set forth in the record, it appears that within a short time after the filing of the petition the defendant filed a motion to make such pleading more definite and certain and to strike

certain allegations therefrom. Apparently that motion was regarded by the defendant as of little importance and was abandoned, for the record discloses a stipulation of the parties authorizing its withdrawal and the filing of a demurrer in lieu thereof. This demurrer challenged the sufficiency of the petition and the jurisdiction of the trial court as to the person of the defendant and the subject matter of the action and was sustained by the trial court and the action dismissed on the express ground it was without jurisdiction to hear and determine the plaintiff's claim. The appeal is from the decision sustaining the demurrer and dismissing the action.

Appellee states, wthout denial on the part of appellant, that the trial court did not attempt to pass upon the question of whether the petition failed to state facts sufficient to constitute a cause of action and insists the demurrer should have been sustained on that ground. Also, he further insists, and we concede his position, that under our decisions if the ruling was correct, even if the reason given by the trial court on sustaining the demurrer was erroneous, the judgment must stand. (*Turner v. Jarboe,* 151 Kan. 587, 100 P. 2d 675; *State, ex rel., v. Iola Theatre Corp.,* 136 Kan. 411, 15 P. 2d 459; *La Harpe Farmers Union v. United States F. & G. Co.,* 134 Kan. 826, 8 P. 2d 354; *City of Wichita v. Boles,* ante, p. 619, syl. ¶ 2, 135 P. 2d 542.) Notwithstanding the state of the record in this respect, we are inclined to the view the trial court gave consideration to that part of the demurrer objecting to the sufficiency of the petition and considered that it was overruled by failing to expressly sustain it on that ground. Be that as it may, the effect of appellee's argument is that the court erred in failing to sustain the demurrer on the ground the petition failed to state a cause of action and for purposes of this appeal we shall so consider it.

That it is not improper for a person to file a monetary claim against the estate of a deceased person where that person has performed special services under an agreement with an aged person, to be paid for in land or other compensation and the agreement has not been fulfilled by the promisor at the date of his death, has been decided by this court. (See *In re Estate of Hutchinson,* 151 Kan. 333, 99 P. 2d 992.) This conclusion also finds support in *McEnulty v. McEnulty,* 146 Kan. 198, 69 P. 2d 1105. Since it has been determined a claimant has a cause of action for monetary compensation under the circumstances related, the sole question remaining for our consideration in disposing of appellee's contention

is the sufficiency of the facts set forth in the petition to establish that cause of action. Our examination of the petition, the substantial averments of which have been purposely, insofar as practical, set forth herein in the language of the pleader, convinces us that it was sufficient as against a demurrer. The facts on which appellant relied, while they may not have been stated in the ordinary and concise language contemplated by the code, were pleaded in detail and at considerable length. If the appellee considered the allegations of the petition incomplete, imperfect or defective, he should have insisted upon a ruling on his motion to make the petition more definite and certain. Having withdrawn that motion and substituted a demurrer in lieu thereof, the averments of the petition must be liberally construed in favor of the pleader. (See G. S. 1935, 60-736; *Downey v. Phillips,* 137 Kan. 362, 20 P. 2d 453; *Kirwin v. McIntosh,* 151 Kan. 289, 98 P. 2d 160; *Owens v. Deutch et al.,* ante, p. 779, 137 P. 2d 181.) Measured by this rule, the trial court could properly have overruled the demurrer, and if the judgment in the case is to be affirmed it cannot be upon the ground the petition failed to set forth facts sufficient to constitute a cause of action.

There now remains but one question for further consideration on this appeal. Did the district court err in sustaining the demurrer to the petition on the ground it was without jurisdiction to hear and determine appellant's claim?

Were we disposed to do so, inasmuch as it must be conceded by all that probate courts have jurisdiction to hear and determine demands against the estate of a deceased person (Const., art. 3, § 8; G. S. 1941 Supp. 59-301, 59-2237), we might well dispose of this appeal here and now without giving consideration to the arguments advanced by appellant in support of his contention the district court and the probate court have concurrent original jurisdiction in the matter of exhibiting and establishing demands against estates of decedents.

Irrespective of what may be said for or against appellant's contention, this court has uniformly held that where a petition filed in the district court to hear and determine a claim against the estate of a deceased person shows upon its face the probate court may be applied to for that purpose, or that the issue therein involved is one over which the probate court is already exercising jurisdiction, it is not error to sustain a demurrer to such petition. (*State v. Zim-*

*merman,* 121 Kan. 346, 246 Pac. 516; *Holmes v. Conway,* 128 Kan. 430, 278 Pac. 8.) The petition in this case shows the existence of that situation, and the district court did not commit error in sustaining the demurrer.

As we have stated, this case could properly be concluded at this point but we do not intend to so dispose of it.

Since the enactment of the Kansas probate code, effective on July 1, 1939, there has been some differance of opinion among the members of both the bench and bar on the question of concurrent and exclusive jurisdiction of the district and probate courts on matters pertaining to the direction, control and administration of estates of deceased persons. Especially perplexing has been the application of the provisions of the code to the jurisdictional question on exhibition and establishment of demands against decedents' estates.

A determination of these questions necessarily requires an investigation of our constitutional and statutory provisions conferring jurisdiction generally on both district and probate courts.

The applicable provisions of the constitution are as follows:

Article 3, section 6, reads:

"The district courts shall have such jurisdiction in their respective districts as may be provided by. law." .

Article 3, section 8, reads:

"There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, minors, and persons of unsound minds, as may be prescribed by law, . . . ." '

Pertinent statutory provisions are, G. S. 1935, 20-301, which reads:

"There shall be in each county organized for judicial purposes a district court, which shall be a court of record, and shall have general original jurisdiction of all matters, both civil and criminal (not otherwise provided by law), and jurisdiction in cases of appeal and error from all inferior courts and tribunals, and shall have a general supervision and control of all such inferior courts and tribunals, to prevent and correct errors and abuses."

G. S. 1941 Supp. 59-301, which reads:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction:

. . . . . . . . . . . . .

"(2) To grant and revoke letters testamentary and of administration.

"(3) To direct and control the official acts of executors and administrators, to settle their accounts, and to order the distribution of estates.

. . . . . . . . . . . . .

"(5) To determine the heirs, devisees, and legatees of decedents.

. . . . . . . . . . . . . . . .

"(11) Such other jurisdiction as may be given them by statutes pertaining to particular subjects.

"(12) And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

Recently this court has been required to give attention to the jurisdictional questions referred to, and since rendition of the de-. cisions in *Behee v. Beem,* ante, p. 115, 131 P. 2d 675; *Swisher v. Bouse,* 155 Kan. 797, 130 P. 2d 565; *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242; *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364 and *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 470, it has been definitely and finally determined that where a party has an adequate remedy for equitable relief in the probate court and that court is exercising its jurisdiction, such party may not invoke the jurisdiction of the district court. The rule announced simply determines the remedy and jurisdiction in the first instance. It denies a litigant no right based upon any theory, either legal or equitable, for if a claimant is dissatisfied with the ultimate outcome of his litigation in probate court the new code gives the district court on appeal the same general jurisdiction and power, as though the controversy had been directly commenced by action or proceeding therein and as though it would have had original jurisdiction of the action. (G. S. 1941 Supp. 59-2408.)

It will be noted, however, that the cases just cited deal with factual situations wherein it was sought either to contest a will, specifically enforce an agreement to make a will, require specific performance of an oral contract, where it was alleged decedent had agreed to leave all of his real estate and personalty, or a part thereof, to the plaintiff in consideration of services, or to impress a trust upon real estate in contravention of a devise made in a will. They were all decided upon the express ground that the decision of questions raised by actions of the character described were necessary before the estate of a deceased person could be administered.

Appellant concedes the effect of these decisions insofar as they lay down a rule applicable to the institution of equitable proceedings, but he seeks to distinguish the factual situation in the instant case in that he says he is seeking to exhibit and establish a pure legal demand for money, wholly devoid of equitable features. It is urged that insofar as the establishment of legal claims is con-

cerned this court has never held the probate court had original and exclusive jurisdiction, and that notwithstanding the provisions of the new code and our decisions, the district and probate courts each have original and concurrent jurisdiction over such matters. In support of his contention appellant relies upon G. S. 1941 Supp. 59-2238, which reads:

"Any action pending against any person at the time of his death, which by law survives against the executor or administrator, shall be considered a demand legally exhibited against such estate from the time such action shall be revived. Any action commenced against such executor or administrator after the death of the decedent shall be considered a demand legally exhibited against such estate from the time of serving the original process on such executor or administrator. The judgment creditor shall file a certified copy of the judgment in the proper probate court within thirty days after said judgment becomes final."

In view of the allegations of appellant's petition something might be said with reference to his contention that his claim is strictly a legal demand rather than an equitable one but we will pass that without further comment. We might also challenge the argument that if a party has an adequate remedy by an ordinary legal proceeding in the probate court, after the institution of administration proceeding there has been no decision of this court to the effect the jurisdiction of the probate court is then exclusive. (*Foss v. Wiles,* 155 Kan. 262, 267, 124 P. 2d 470; *Dixon v. Fluker,* 155 Kan. 399, 404, 125 P. 2d 364; *Correll v. Vance,* 127 Kan. 840, 275 Pac. 174; *Holmes v. Conway,* 128 Kan. 430, 278 Pac. 8, and *Shuckrow v. Maloney,* 148 Kan. 403, 411, 83 P. 2d 118.) We will pass that statement also without contest.

We believe the legal proposition announced in those cases just cited is well grounded, but we are not unmindful that decisions of this court can be found affirming the action of a district court in permitting legal demands against an estate to be exhibited and established before it at a time when administration proceedings were pending in the probate court. A careful examination of such decisions will, in our opinion, lead to the conclusion that the question of the jurisdiction of the district court was never raised in those cases and the issues therein involved were determined on some other proposition of law. Be that as it may, it would serve no useful purpose to attempt to harmonize any apparent inconsistencies in decisions rendered prior to the date the new probate code became effective, for we believe that the conclusions presently announced

are substantiated by the language of the code itself. We propose to base this decision on our interpretation of that language, backed by the reasoning to be found in those of our decisions handed down since the enactment of the code, to the end that there will no longer be any uncertainty in the mind of anyone as to what forum should be applied to in order to properly exhibit and establish a legal claim against a decedent's estate. Not only this appellant but the bench and the bar are entitled to have that question definitely and finally determined. To accomplish that result we have refrained from a determination of this appeal on more technical grounds.

The history preceding the eventual enactment of the code convinces us that it was the intention of the legislature to make a very material change in the law providing for the administration of decedents' estates. To accomplish that purpose it specifically conferred original jurisdiction on the probate court not only by express language as to certain conditions and situations but by other general authorization to be found in G. S. 1941 Supp. 59-301 (11) and (12). This general authority if, as, and when, the powers are found in other portions of the code confers exclusive jurisdiction on the probate court as to the exercise of such powers. It must, of course, be conceded that general original jurisdiction is conferred on the district court as to all matters not otherwise provided by law. (G. S. 1935, 20-301.)

That the legislature in the enactment of the code possessed the power to confer as well as take away jurisdiction from both district and probate courts is apparent from our constitution (art. 3, §§ 6, 8), and must also be conceded.

Our consideration of sections of the code presently referred to must be guided by cardinal rules of statutory construction often referred to by this court.

In *Hunziker v. School District,* 153 Kan. 102, 109 P. 2d 115, it was said.

"It is a fundamental rule of statutory construction, to which all others are subordinate, that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. This rule, stated in various forms, has been applied by this court throughout its history . . . (and cases cited). . . ." (p. 107.)

To the same effect is *Russell v. Cogswell,* 151 Kan. 793, 799, 101 P. 2d 361.

In *Clark v. Murray*, 141 Kan. 533, 41 P. 2d 1042, it was held:

"When the interpretation of a statute according to the exact and literal import of its words would thwart or contravene the manifest purpose of the legislature in its enactment, it should be construed according to its spirit and reason, disregarding, as far as may be necessary, the strict letter of the law." (Syl. ¶ 3.)

See, also, *Shumaker v. Kansas State Labor Dept.*, 154 Kan. 418, 118 P. 2d 550, wherein we held:

"When a statute is susceptible of more than one construction it must be given that construction which, when considered in its entirety, gives expression to its intent and purpose, even though such construction is not within the strict literal interpretation of the statute." (Syl. ¶ 1.)

What are the pertinent sections of the probate code to which we should give consideration in our determination of this question?

Héretofore, we have set forth at length pertinent portions of G. S. 1941 Supp. 59-301, giving the probate court original jurisdiction. We now direct our attention to particular subdivisions of that section.

Subdivision (2) reads: "To grant and revoke letters testamentary and of administration." It can be stated that grant of power carries with it the right to direct and control an executor and administrator in all matters pertaining to the administration of a decedent's estate, including his activities in the matter of exhibiting and establishing demands against such estate. If G. S. 1941 Supp. 59-2238 is given the construction placed on it by appellant, the original jurisdiction given to the probate court in those particulars is taken from it and placed under the control and direction of the district court. This statement, on first consideration, may seem somewhat trival but on sober reflection it does not appear to be so fatuous. It will be noted G. S. 1941 Supp. 59-2238 provides: "The judgment creditor shall file a certified copy of the judgment in the proper probate court within thirty days after said judgment becomes final." When the judgment is filed it then becomes the duty of the executor or the administrator, as the case might be, to allow the claim. Therefore, to that extent he would be acting under the direction of the district court, not the probate court which had original jurisdiction to direct his activities.

Subdivision (3) reads: "To direct and control the official acts of executors and administrators, to settle their accounts, and to order the distribution of estates."

If the probate court is "to direct and control the official acts of the administrators and executors" that power includes the right to

require notice to be given to all persons interested in the hearing on the application which is presented for the allowance of the claim and the right to weigh the evidence offered by the claimant in support of its allowance. If it has the power to "settle their accounts" it has, or should have, the right to determine what claims, as well as other matters, should be included in those accounts. If it has original jurisdiction "to order the distribution of estates," included in which is a determination of the amount of money to go to each distributee, it has, or should have, the power to determine what assets should be included and what liabilities should be excluded in the sum total which is to be distributed. If G. S. 1941 Supp. 59-2238, controls and the probate court is required to accept the judgment of the district court in lieu of its judgment then it does not have original jurisdiction with respect to any of the matters herein referred to. The funds in the hands of the administrator to be used in the payment of claims exhibited and allowed are as much a part of a decedent's estate as real estate or other property belonging thereto. When an estate is being administered in probate court it is as necessary that the right, or title to those funds, be determined in order that the estate may be settled as it is that the title to real estate or other property be settled to accomplish that purpose. The difference is in the type of property affected, not the principle involved. To us it would appear facetious to hold as we have in the case of *Foss v. Wiles*, supra, *et seq.*, where title to real estate was questioned, and reverse that ruling in the instant case where the right and title to another class of property is being questioned in a similar, if not identical manner. The reasoning upon which the decision is based in the one case is applicable to the other.

Subdivision (11) conferring original jurisdiction on the probate court as to particular subjects when given by statute and subdivision (12) granting such equitable powers as may be necessary and proper to fully hear and determine any matter properly before it are applicable to other sections of the code presently referred to.

Pertinent portions of G. S. 1941 Supp. 59-1303 read:

"When a claimant holds any security for his demand, it may be allowed, conditioned upon the claimant surrendering the security or upon the claimant exhausting the security; it shall be allowed for the full amount found to be due if the security has been surrendered, or for any remaining amount found to be due if the security has been exhausted."

It occurs to us this section is indicative of what the legislature had in mind by including the last two sentences of G. S. 1941 Supp.

59-2238 in the code. If a claimant sees fit to surrender his security he may file his claim in probate court and have it allowed for the full amount. If he chooses to exhaust his security he may do so by an action filed in district court to foreclose his lien. If the property sold under that proceeding is insufficient to pay the full amount the district court is given the power to render a deficiency judgment for the remaining amount it finds to be due and such amount shall be considered a demand legally exhibited against the executor or administrator from the time of the original service of summons upon him.

Further evidence of the purpose of the framers of the Kansas probate code and the legislature in enacting it, to grant probate courts exclusive jurisdiction as far as possible over all matters incident and ancillary to the management, administration, settlement and distribution of decedents' estates, is found in the fact that by its terms every probate proceeding, including the exhibiting and allowance of demands against an estate, was made adversary where in many instances under the old code it was merely ex parte. We shall direct our consideration to the procedure provided for in cases where a petition is filed for the allowance of a demand.

G. S. 1941 Supp. 59-2208 reads:

"When notice of any probate proceedings is required by law or deemed necessary by the court and the manner of giving the same shall not be directed by law, the court shall order notice to be given *to all persons interested,* in such manner and for such length of time as it shall deem reasonable. Any required notice may be waived in writing by any competent person or by any fiduciary." (Italics supplied.)

G. S. 1941 Supp. 59-2237 reads:

"Any person may exhibit his demands against the estate of a decedent by filing his petition for its allowance in the proper probate court. The petition shall contain a statement of all offsets to which the estate is entitled. *The court shall from time to time as it deems advisable, and must at the request of the executor or administrator, or at the request of any creditor having exhibited his demand, fix the time and place for the hearing of such demands, notice of which shall be given by the executor or administrator in such manner and to such persons as the court shall direct.* Any demand not exceeding fifty dollars, duly itemized and verified, may be allowed, if approved in writing by the executor or administrator, without compliance with any of the provisions of this act relating to petition, notice of hearing, or otherwise. . . . " (Italics supplied.)

It will be noted that portion of the first section above quoted, to which emphasis is supplied, provides that when it is deemed neces-

sary by the court, the court shall give notice to all persons interested. The section last above quoted requires the court from time to time, as it deems advisable on its own initiative, or at the request of the executor or administrator, or any creditor who has exhibited his demand, to fix the time and place for the hearing of such demand, notice of which shall be given by the executor or administrator in such manner and to such persons as the court shall direct. It will be further noted that G. S. 1941 Supp. 59-2238 provides a demand may be legally exhibited not by notice to all persons interested or to such persons as the probate court may direct, but by service of process on the executor or administrator, also that any judgment obtained as a result of such proceeding becomes final. To hold that this section gives the district court jurisdiction to allow general unsecured demands against an estate on service upon the administrator or executor results in a nullification of the related provisions of G. S. 1941 Supp. 59-2208 and 59-2237, and to hold that its judgment when rendered becomes final, nullifies the provisions of G. S. 1941 Supp. 59-301 (3), conferring original jurisdiction on the probate court in all matters pertaining to the direction and control of the official acts of executors and administrators, the settlement of their accounts and the distribution of estates. Such a holding would also, in our opinion, abrogate the intended accomplishment of the legislature in enacting the statute.

In our opinion the following sections are indicative, although not necessarily determinative of the view just stated.

G. S. 1941 Supp. 59-2401 reads:

"An appeal to the district court may be taken from any of the following orders, judgments, decrees, and decisions of the probate court: . . . An order allowing, or disallowing, a demand in whole or in part when the amount in controversy exceeds fifty dollars. . . ."

G. S. 1941 Supp. 59-2402 reads:

"In any proceeding pending in the probate court when it appears that a decision upon any question of which the probate court does not have jurisdiction is necessary to a full determination of the proceeding, such question shall be certified by the probate court to the district court, having appellate jurisdiction thereof, which court shall proceed to hear and determine the same as though an action involving that question had been filed originally therein. The decision of the district court, when final, shall be certified to the probate court in like manner as a decision upon appeal."

G. S. 1941 Supp. 59-2408 reads:

"Upon the filing of the transcript the district court, without unnecessary

delay, shall proceed to hear and determine the appeal, and in doing so shall have and exercise the same general jurisdiction, and power as though the controversy had been commenced by action or proceeding in such court *and as though such court would have had original jurisdiction of the matter.* . . ." (Italics supplied.)

We realize that no one section of the probate code referred to, standing alone, is conclusive of the question we have under consideration and that some of them are merely indicative of the legislative intent. However, we feel that when considered as a whole, measured by applicable rules of statutory construction, they justify the conclusion that G. S. 1941 Supp. 59-2238 applies solely to a situation where the code makes no express or adequate provision for the establishment of a demand in the probate court. Such a conclusion is in accord with the spirit and reason of the statute and insofar as practical recognizes and reconciles all of the different provisions of the code, making them consistent, harmonious and sensible.

It needs no argument to sustain the view that when a person dies his individual capacity to respond in damages for his torts, to pay his debts, to carry out his contracts, and to distribute his estate ceases. Thereafter his financial obligations must be met by his estate. One who deems himself entitled to a part or all of such an estate, whether the right contended for is founded in tort, or upon oral or written contract, or under the will of the decedent, or under the statute of intestate succession, must recover, if at all, from the decedent's estate. Under our probate code the probate court is made the forum for the transaction of this business, and it is given original jurisdiction to probate the will, if decedent left one, to appoint an executor or an administrator of his estate, to require an inventory and appraisement of the assets of the estate, to hear the petition of anyone who claims all or any part of the estate, after due notice to all parties interested so each may have his day in court, and ultimately to settle the accounts of the executor or administrator and to disburse the estate to those legally entitled thereto. Is there anything in our constitution which prohibits the legislature from giving the probate court original jurisdiction in all these matters? We find nothing. Indeed, it is not seriously contended that such a constitutional prohibition exists. Does it conflict with the jurisdiction given by our constitution or by our statutes to district courts? The answer must be in the negative, since our constitution leaves the jurisdiction of the district courts to the legislature and

the legislature by statute has given the district courts original jurisdiction in all those matters where the original jurisdiction is not given to some other court.

It will serve no useful purpose to extend discussion on the legal question in issue. Summarizing, this court except in matters involving the adjudication of secured demands and a few others where adequate and proper relief is not expressly provided for, is committed to the doctrine that the new Kansas probate code grants exclusive original jurisdiction to the probate court over all matters incident and ancillary to the control, management, administration, settlement and distribution of decedents' estates, including the exhibition and establishment of claims and irrespective of whether those claims be denominated equitable or legal.

Judicial adherence to this doctrine can do no injustice to litigants for the code gives the district court on appeal the same general jurisdiction as though their action or proceeding had been commenced in the district court.

The conclusion just announced is fortified by the well-established rule that even in cases where there is concurrent jurisdiction, the court which first acquires jurisdiction retains it to the exclusion of another court which seeks to assume it. (21 C. J. S. p. 745 § 492; 14 Am. Jur. p. 435 § 243; *Proctor v. Dicklow*, 57 Kan. 119, 125, 45 Pac. 86; *Watts v. Watts*, 151 Kan. 125, 98 P. 2d 125; *Shuckrow v. Maloney*, 148 Kan. 403, 411, 83 P. 2d 118; *Starke v. Starke*, 155 Kan. 331, 336, 125 P. 2d 738.)

It is further fortified by the fact that the cases evidencing the pronouncement of this doctrine as being within the intent of the legislature in enacting the provisions of the code were, with one exception, published some time prior to the 1943 session of the Kansas legislature, which failed to enact any legislation indicating an intent contrary to that given the 1939 enactment by this court.

The judgment of the trial court in sustaining the demurrer to the petition and in dismissing the action is affirmed.