## No. 37,069

In re Estate of O. G. Hinshaw, Deceased (THE FIRST NATIONAL BANK OF HUTCHINSON, *Appellee,* v. MAURINE H. DION, DONNA FEATHERMAN, FAIRY G. HEYLMUN and HOMER MYERS, Guardian of the Estate of Theodore Jensen, Carol Featherman, Dianne Dion, Derra Dion, Darrel Dion and Charmaine Dion, Minors, *Appellants).*

## No. 37,096

In re Estate of O. G. Hinshaw, Deceased (THE FIRST NATIONAL BANK OF HUTCHINSON, *Appellee,* v. HOMER MYERS, Guardian of the Estate of Theodore Jensen, Carol Featherman, Dianne Dion, Derra Dion, Darrel Dion and Charmaine Dion, Minors; MAURINE H. DION, DONNA FEATHERMAN and FAIRY G. HEYLMUN, *Appellants).*

(190 P. 2d 386)

Opinion filed March 6, 1948.

*Walter F. Jones,* of Hutchinson, argued the cause, and *J. Richards Hunter* and *Harry H. Dunn,* both of Hutchinson, were with him on the briefs for the appellants.

*H. R. Branine,* of Hutchinson, argued the cause, and *C. E. Chalfant* and *F. C. Littooy,* both of Hutchinson, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: These two appeals involve different phases in the administration of an estate. Various petitions were filed in the probate court and on motion of the executor named in the will were certified to the district court for determination. Motion of petitioners in each proceeding to remand the petition to the probate court was denied. Judgment on the merits was entered against the petitioners in one proceeding. The appeals are from those orders refusing to remand and from the one judgment on the merits.

It will help in the understanding of the opinion if we identify the different parties at the outset.

O. G. Hinshaw died leaving an estate consisting of land in California and considerable land in Kansas. Fairy G. Heylmun was his sister. She is still living. Her husband has predeceased her and she has no children. Maurine H. Dion and Donna Featherman are daughters of O. G. Hinshaw. Theodore Jensen and Carol Featherman are children of Donna Featherman and grandchildren of O. G. Hinshaw. Dianne Dion, Derra Dion, Darrel Dion and Charmaine Dion are children of Maurine H. Dion. They are also grandchildren of O. G. Hinshaw. Homer Myers is the legal gaurdian of all the grandchildren.

On January 21, 1946, the will of O. G. Hinshaw was admitted to probate in the probate court of Reno county, Kansas. We shall pay some attention to that will now. It first disposed of some of his holdings in California. It then contained the following clause:

"Seventh: I give, devise, and bequeath any and all real estate, or interest therein, owned by me and situated in the State of Kansas, consisting of farm land leased for and producing oil and petroleum, to the First National Bank of Hutchinson, Kansas, to be held in trust upon the following uses and trusts in relation to the same."

The will later provided that the Kansas trust should terminate when the youngest survivor of the testator's grandchildren, naming them, that is, the grandchildren who have been named heretofore in this opinion, should have attained the age of thirty years or upon the death of the last survivor or if all should die before the youngest should attain the age of thirty years. It then provided for the percentage each grandchild should receive upon the termination of the trust. The eighth provision of the will was as follows:

"Eighth: I give, devise and bequeath all the residue and remainder of my

estate, both real and personal, wheresoever situated, including all lapsed and failed legacies and devises and income received from the Kansas Trustee, but excluding any and all real property or interest therein situated in the State of Kansas which I may own at the time of my death, hereinafter termed the trust estate, to Bank of America National Trust and Savings Association, a national banking association, in trust, to be held, administered and distributed in accordance with the following provisions:"

Then followed some provisions with respect to the trust, with which we are not now concerned.

On September 10, 1946, Maurine H. Dion and Donna Featherman filed a petition in the probate court of Reno county in which they alleged that O. G. Hinshaw, their father, and Fairy Heylmun, their aunt, brother and sister, were the children of W. H. Hinshaw and Elizabeth H. Hinshaw; that O. G. Hinshaw and Fairy Heylmun both inherited considerable property from W. H. Hinshaw and Elizabeth H. Hinshaw. The petition then set out the relationship of the parties, which has been stated heretofore, and alleged that sometime between April 1 and June 1, 1945, O. G. Hinshaw and Fairy Heylmun made an oral agreement to the effect that O. G. Hinshaw would will to petitioners, that is, his daughters, all of his property and that Fairy Heylmun would will all of her property to the children of these petitioners, the grandchildren of O. G. Hinshaw, who have been named heretofore, to be held in trust for a reasonable and proper time and that relying upon this agreement Fairy Heylmun on August 30, 1945, made her will providing for the disposition of her property in accordance with the agreement; that notwithstanding the oral contract O. G. Hinshaw executed his will which was in direct violation of his contract with Fairy Heylmun. The petition stated that Fairy Heylmun fully performed her part of the contract and she desired that the contract be fully performed on the part of O. G. Hinshaw. The petition then alleged that by the provisions of the contract the two petitioners, that is, Maurine H. Dion and Donna Featherman, were entitled to have all the Kansas property belonging to O. G. Hinshaw decreed to be their property free and clear of any of the terms of the will. The petition further stated that at the time of his death O. G. Hinshaw owned considerable farm property in Kansas and that in paragraph seven of his will he devised all real estate or interest therein owned by him and situated in the state, consisting of "farm land leased for and producing oil and petroleum" to the First National Bank of Hutchinson, Kansas, and that in paragraph eight of his will he devised all the

residue and remainder of his estate, consisting of real property and interests therein, which he might own at the time of his death. The petition then set out certain farm property of O. G. Hinshaw, which was producing oil and petroleum, and alleged that by the terms and provisions of the will all of the other property and real estate situated in the state of Kansas was not devised in any manner whatsoever and was a part of the estate of O. G. Hinshaw as intestate property and descended directly to the petitioners. The prayer of this petition was as follows:

"Wherefore, your petitioners pray that the Court make an Order finding and adjudging that the contract between Fairy Heylmun and O. G. Hinshaw for the devising of their property is a valid and enforceable contract made for the use and benefit of these petitioners, and finding, adjudging, and decreeing that Maurine Dion and Donna Featherman are the absolute owners of all of the property in Kansas belonging to the estate of O. G. Hinshaw, deceased, subject only to lawful indebtedness against said estate and the cost of administration, and in the alternative, that if the Court should find that said contract is not a valid contract, that the Court make an order finding, adjudging, and decreeing that all of the real estate in the State of Kansas belonging to the Estate of O. G. Hinshaw other than the particular farm property which was leased for and producing oil and petroleum at the time of his death was not devised in any manner whatsoever in the Last Will and Testament of O. G. Hinshaw, deceased, and that said property is intestate property and descends to and the title thereto vests and has vested in Maurine Dion and Donna Featherman under the laws of the State of Kansas."

On September 19, 1946, this petition was amended and on various dates was set for hearing and continued on motion of The First National Bank of Hutchinson, executor of the estate, located in Kansas, and trustee named in the will.

On February 11, 1947, the executor filed a petition asking that this petition be transferred for hearing to the district court for the reason that a bona fide controversy existed. This petition stated that the transfer was asked in accordance with G. S. 1945 Supp. 59-2402a and 59-2402b.

On February 11, 1947, the petition of Maurine H. Dion and Donna Featherman was ordered transferred to the district court.

On March 1, 1947, Maurine H. Dion and Donna Featherman filed a motion in which they asked that the district court remand the petition to the probate court for the reason that the proceedings were not properly certified by the probate court to the district court; that they were not such proceedings as might properly be certified by the probate court to the district court; that proceedings

were had in the probate court after the filing of the pleadings and a partial hearing was had thereon and that after a partial hearing proceedings could not be certified from the probate court to the district court; that the proceedings involved the construction of a will, in which the probate court had exclusive jurisdiction pending the administration of the estate and that the estate was still pending in the probate court and that the district court had no jurisdiction to hear and determine the matter involved in the petition.

On March 4, 1947, this motion was overruled, also the motion of petitioners to dismiss the certification.

We shall now go back in point of time to take up an analogous proceeding.

On October 1, 1946, Fairy Heylmun, a sister of O. G. Hinshaw, filed a petition in the matter of the estate of O. G. Hinshaw. She alleged the making of the same oral contract, which was set out in the petition of Maurine H. Dion and Donna Featherman, in which she alleged she was to give all of her estate to the grandchildren, with the exception of $40,000 which she was to leave other legatees. Her petition alleged that she had fully performed her part of the agreement; that O. G. Hinshaw was bound by it and she was entitled to have the contract enforced and to have all the property in Kansas belonging to the estate of Hinshaw decreed to be the property of Donna Featherman and Maurine H. Dion. She prayed for such an order.

On February 6, 1947, The First National Bank of Hutchinson filed a petition asking that this petition be transferred to the district court.

On February 11, 1947, the petition was sustained.

At different dates in the district court a motion of the executor for the Heylmun petition to be made more definite and certain was sustained and an amended petition filed, the answer of the executor was filed and on June 25, 1947, Heylmun filed a motion asking that the proceedings be remanded to the probate court.

On June 25, 1947, this motion was overruled.

We shall now return again in point of time to the early stages of this litigation.

On November 14, 1946, Homer Myers, legal guardian of the estates of the grandchildren, and Maurine Dion and Donna Featherman, the two daughters of Hinshaw, filed a petition in which they referred to the petitions of Maurine H. Dion and Donna Feather-

man and that of Fairy G. Heylmun, which have already been set out in the opinion. The petition then referred to the terms of the contract between Heylmun and Hinshaw and stated that by the terms of the last will of Hinshaw the larger part of his Kansas estate was left intestate and, therefore, descended directly to the petitioners, Dion and Featherman; that the property belonging to Hinshaw in Kansas amounted approximately to $175,000 and $200,000 in California and other states, and that the property was devised in trust to the daughters of Hinshaw and the grandchildren of Hinshaw, and that of the property belonging to Hinshaw in Kansas only a small part was devised under his will and the remainder descended intestate and that if the contract should be established the minor heirs of Hinshaw would lose all their interest in O. G. Hinshaw's estate. The petition then set out a contract it alleged had been entered into by the petitioners, that is, the minor heirs and Maurine H. Dion and Donna Featherman and Fairy G. Heylmun, the sister of Hinshaw, whereby it was agreed that the Kansas property of Hinshaw should go to his daughters under the contract and that Fairy G. Heylmun would devise all her property to the grandchildren, except approximately $40,000 and other property, which amounted to almost $214,000 belonging to the Hinshaw estate should follow the terms and provisions of the will of O. G. Hinshaw. The petition then stated that the agreement was to the best interests of the minors, was equitable and should be approved by the court. The petition prayed that this family settlement be approved. This petition was set for hearing in the probate court. Motions for additional time and for continuance were filed.

On December 3, 1946, the petition was heard by the probate court. Evidence was introduced and the probate court made an order approving the contract.

On February 11, 1947, the order of the probate court approving the contract was set aside on the motion of the executor, The First National Bank of Hutchinson. The grounds alleged in this motion to set aside were that the probate court was without jurisdiction to approve or disapprove the contract; that some of the parties to it were not of full age and were not properly represented at the hearing; that under the provisions of Hinshaw's will the unborn issue of the parties had a substantial interest in his estate; that the unborn issue were not represented and their rights were not protected in the purported family settlement agreement; that under Hinshaw's

will the real estate owned by him was bequeathed to the bank as trustee and the trustee had not qualified and was not represented at the hearing; that the order approving the contract recited that the bank was represented by its trust officer but that this statement was incorrect; that it was not represented in court when the contract was approved; that the executor had no notice of any purported hearing to be held when the order was entered; that the hearing had been continued and the date had not been agreed upon; that the order filed contained a finding that Hinshaw had made a contract with his sister before his death; that such finding was not supported by any evidence and to the best belief of the executor was not correct; that the court did not make any announcement when it made this order that it was rendering an order on any of the matters of the estate and the written jurisdiction was never submitted to the executor or its attorneys; that a full and complete hearing of all the facts had not been presented or heard by the court.

On June 25, 1947, the executor filed a motion to transfer the petition asking approval of the family settlement to the district court. The petition was ordered transferred.

On February 1, 1947, Myers, the legal guardian for the minors, filed a motion to remand the above to the probate court.

On June 25, 1947, this motion of Myers to remand was overruled.

Thus we see that three different petitions of interested parties in this estate have been certified to the district court from the probate court and in each case interested parties have asked that this certification be remanded.

On August 12, 1947, Maurine H. Dion, Donna Featherman and Fairy G. Heylmun and Homer Myers, guardian of the estate of the grandchildren, appealed from the orders of the district court overruling the various motions to remand.

The above appeal is No. 37,069 in this court.

Nothing more was done in the first of these two proceedings. They simply remained on the docket of the district court. Further proceedings were taken in the matter of the petition of Myers for the minors and Maurine H. Dion and Donna Featherman and Fairy Heylmun. First on March 1, 1947, on motion of petitioners John Fontron was appointed a guardian *ad litem* for the minors and unborn persons involved in the proceedings. On March 10, 1947, this order was set aside and John Fontron was appointed guardian *ad*

*litem* for the minors, naming them, the change in his status being that he was no longer guardian *ad litem* for unborn persons.

Still another step was taken in the proceedings. On February 28, 1947, the executor filed a motion in district court to dismiss the petition of Homer Myers for the minors, and Maurine H. Dion and Donna Featherman. The grounds stated in this motion were that the court was without jurisdiction to approve or disapprove the family settlement; that the agreement purported to destroy the plain intent and the purpose of the last will of O. G. Hinshaw without the consent of all the beneficiaries named in it; and the petition failed to state any cause of action for relief. It will be seen that in this motion the executor asked the trial court to rule upon the merits of the petition as they appeared on the face of the petition. On September 23, 1947, the district court sustained this motion and dismissed the petition. The result of this action of the district court was to deny to the petitioners the relief asked by them. It must be remembered that this petition reached the district court by the probate court certifying the proceedings to the district court under the provisions of G. S. 1945 Supp., 59-2402a. On October 3, 1947, Homer Myers, guardian for the minors, Maurine H. Dion and Donna Featherman and Fairy G. Heylmun all appealed from the order of the district court of September 23, 1947, dismissing the petition. That is appeal No. 37,096.

Thus it will be seen Maurine H. Dion and Donna Featherman, petitioners in one proceeding, Fairy Heylmun in another proceeding, and Homer Myers, legal guardian for the minors, Maurine H. Dion and Donna Featherman, all joining as petitioners in another proceeding are all appealing from the judgment of the district court on the merits of their petition. They are opposed here, as they were in the trial court, by the First National Bank of Hutchinson, executor and trustee under the will. The specifications of error may be set out together. They are as follows:

"1. The Court erred in overruling the Motion of Maurine H. Dion filed March 1, 1947, to dismiss the certification to the District Court by the Probate Court of the petition of Maurine H. Dion and Donna Featherman.

"2. The Court erred in overruling the Motion of Maurine H. Dion and Donna Featherman filed May 7, 1947, to dismiss the proceedings certified to the District Court by the Probate Court.

"3. The Court erred in overruling the Motion of Fairy G. Heylmun filed June 25, 1947, to remand to the Probate Court of Reno County, Kansas, the proceedings in which Fairy G. Heylmun was petitioner.

"4. The Court erred in overruling the Motion of Maurine H. Dion and Donna Featherman filed June 25, 1947, to remand to the Probate Court their petition which had been certified to the District Court by the Probate Court.

"5. The Court erred in overruling the Motion of Homer Myers as Guardian in which he was joined by Maurine H. Dion and Donna Featherman, filed June 25, 1947, to remand to the Probate Court their petition heretofore certified to the District Court by the Probate Court of Reno County, Kansas.

"6. The Court erred in sustaining the Motion of The First National Bank of Hutchinson, Kansas, as Executor and Trustee filed February 24, 1947, to dismiss the petition of Homer Myers, Guardian, in which he was joined by Maurine H. Dion and Donna Featherman to approve the alleged Family Settlement Contract by the said parties."

The first five of these specifications of error depend directly on the answer to the question of whether the three petitions were properly certified to the district court. It will be remembered the petitioners in each proceeding objected to the certification and in each case asked that the proceedings be remanded to the probate court. In none of the proceedings did the probate court ever finally pass on the matters presented. In each case they were certified to the district court as a matter of form on the request of the executor.

The section under which these certifications were made is G. S. 1945 Supp. 59-2402a. That section provides as follows:

"When a petition, except a petition for the allowance of a demand for less than five hundred dollars, or for the admission to probate of a last will and testament, or to grant or revoke letters testamentary, or of administration, or to direct and to control the official acts of executors and administrators, to settle their accounts, and to order the distribution of estates, or to determine the heirs, devisees and legatees of decedents, or to appoint and remove guardians for minors and incompetent persons, or to direct and control the official acts of such guardians, or to settle their accounts, or to hear and determine cases of habeas corpus shall be filed in the probate court, any interested party may request the transfer of such matter to the district court. When a request for such transfer is filed less than three days prior to the commencement of the hearing, the court shall assess the costs occasioned by the subpoena and attendance of witnesses against the party seeking the transfer. Such request may be included in any petition, answer, or other pleading, or may be filed as a separate petition, and shall include an allegation that a bona fide controversy exists and that the transfer is not sought for the purpose of vexation or delay. Notice of such request shall be given as ordered by the probate court."

That section was enacted in 1945 as section 1 of chapter 237 of the Laws of 1945. That chapter amended G. S. 1943 Supp. 59-2402 and 59-2408. Section 1 of the chapter, the section with which we are concerned, was carried into G. S. 1945 Supp. as 59-2402a. In

the original probate code, chapter 180, section 270 of the Laws of 1939 is carried into G. S. 1945 Supp. as 59-2402. It provides as follows:

"In any proceeding pending in the probate court when it appears that a decision upon any question of which the probate court does not have jurisdiction is necessary to a full determination of the proceeding, such question shall be certified by the probate court to the district court, having appellate jurisdiction thereof, which court shall proceed to hear and determine the same as though an action involving that question had been filed originally therein. The decision of the district court, when final, shall be certified to the probate court in like manner as a decision upon appeal."

It will thus be seen that until the enactment of chapter 237 of the Laws of 1945 the only question that could be certified to the district court from the probate court was one necessary to a full determination of the probate proceeding and over which the probate court did not have jurisdiction. Other sections of the probate code have broadened the scope of the jurisdiction of the probate court. We have by interpretation in numerous opinions held that the probate court under the code had exclusive original jurisdiction in various matters over which up to that time the district court had at least concurrent jurisdiction.

Thus in *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438, we held that an action against the executor to enforce an oral contract of his testator to leave his property to plaintiff and to set aside all provisions of the will, which were at variance with the contract, must be brought originally in the probate court. We analyzed the probate code and said:

"From the various provisions of the code it clearly appears the probate court had original and exclusive jurisdiction, not only of the personalty but also of all real property which belonged to decedent's estate. It was exercising that jurisdiction at the time the instant action was filed. Under the law it was required to determine and describe the property and to state the proportion or part thereof to which each heir, devisee and legatee was entitled, and that decree was binding as to all of the estate of the decedent, whether specifically described in the proceedings or not. (G. S. 1939 Supp. 59-2249.) The probate court could not distribute the estate properly, pursuant to statutory direction, without first settling the questions which were germane to the subject of distribution. Under the provisions of G. S. 1939 Supp. 59-301, that court was expressly granted original jurisdiction and authority to exercise such equitable powers as might be necessary and proper fully to hear and determine any matter properly before it. The matter of the settlement and distribution of the entire estate were properly before it and its original jurisdiction over those matters could not be circumvented by plaintiff filing an independent action in the district court." (p. 269.)

It will be noted the basis of the decision was our view of the necessity under the code of keeping all matters involving an estate before the probate court in which the estate was being administered. The case proved to be a leading one on the subject. It was decided April 11, 1942.

To the same effect is *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364; also *Swisher v. Bouse,* 155 Kan. 797, 130 P. 2d 565.

In *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242, we reiterated our former holdings and said:

" . . . any action whose plain and essential purpose is to get rid of a will—to effect a result contrary to the obvious intent of the testator—is an action 'to contest' the will and can only be brought in conformity with the statutes dealing with the contest of wills." (p. 735.)

We cited *Axe v. Wilson,* 150 Kan. 794, 96 P. 2d 880; *Rishel v. McPherson Co.,* 122 Kan. 741, 253 Pac. 586; rehearing, 123 Kan. 414, 255 Pac. 979, 124 Kan. 31, 257 Pac. 939; *Mayer v. Taylor,* 142 Kan. 54, 57, 45 P. 2d 858; *Kunze v. Kunze,* 145 Kan. 72, 64 P. 2d 558; and *Koch v. Wolf,* 146 Kan. 247, 62 P. 2d 1088.

In *Egnatic v. Wollard,* 156 Kan. 843, 137 P. 2d 188, we considered a situation where an action to collect a simple unsecured demand for services rendered an intestate was brought in the district court. We examined the statute and our decisions and said:

"It will serve no useful purpose to extend discussion on the legal question in issue. Summarizing this court except in matters involving the adjudication of secured demands and a few others where adequate and proper relief is not expressly provided for, is committed to the doctrine that the new Kansas probate code grants exclusive original jurisidiction to the probate court over all matters incident and ancillary to the control, management, administration, settlement and distribution of decedent's estates, including the exhibition and establishment of claims and irrespective of whether these claims be denominated equitable or legal." (p. 857.)

In *Shively v. Burr,* 157 Kan. 336, 139 P. 2d 401, we held that an action for wrongful death against the estate of decedent must be brought in the probate court where the estate of the deceased wrongdoer was being administered.

*In re Estate of Grindrod,* 158 Kan. 345, 148 P. 2d 278, was a case where a will had been offered for probate in the probate court, notice had been given interested parties, but no objections had been filed in that court. After the will had been admitted to probate persons opposed to it appealed to the district court from the order. In the district court for the first time the opponents filed a document de-

nominated "Objections to the Probate of the Will." The proponents of the will demurred to this pleading on the grounds that the district court had no jurisdiction of the subject matter; that the pleading did not state facts sufficient to constitute a defense to the petition to admit the will to probate; and the pleading did not state facts sufficient to constitute grounds for the contest of the will. In stating the precise question involved we said:

"Appellee points out that the appeal provisions of the probate code do not restrict appeals to cases in which the petition for probate was opposed in the probate court. It is true those particular statutes are not expressly so restricted. But is that fact in itself conclusive on the precise question before us? We do not think so.

"The precise question now presented is whether under the new code the legislature intended the appeal statutes should be so construed as to permit a will contest action to be tried originally in the district court. If appellee's contention is sustained that is the court in which grounds for contest of a will may be asserted for the first time and the contest action originally tried. This is true for the simple reason that under the new code actions on appeal to the district court are tried *de novo*. That is, on appeal they are tried in the district court just as though that court would have had original jurisdiction to try a will contest action." (p. 349.)

We examined several of our opinions, some of which have been already set out here and held:

"The district court does not acquire jurisdiction to try a will contest action on appeal from an order admitting a will to probate where the opponent of the will, after having received the required notice of the time and place of hearing for probate, makes no objections of any kind or character to the validity of the will or to its probate and takes no steps in the probate court to vacate or set aside the order of probate." (Syl. ¶ 4.)

In *Erwin v. Erwin*, 153 Kan. 703, 113 P. 2d 349, we held that a probate court had jurisdiction to approve or disapprove a family settlement in an estate being administered before it.

In *Asendorf v. Asendorf*, 162 Kan. 310, 176 P. 2d 535, we held that an action in which it was sought to have a clause of a will held void must be brought in the first instance in the probate court.

In *Kininmonth v. Carson*, 156 Kan. 808, 137 P. 2d 173, we held that an action to quiet title to real estate of a deceased could be brought by the administrator direct to the district court when such action was brought at the direction of the probate court and under the circumstances was necessary to enable the administrator properly to administer the estate.

The foregoing cases are only a few of those in which we consid-

cred the scope of the exclusive original jurisdiction conferred on probate courts by the probate code enacted in 1939. The cases cited and discussed here were all decided before the legislature met in 1945. It is known that the novelty of some of these holdings occasioned many discussions pro and con wherever lawyers met. One argument with which those who argued for the broadened enlarged jurisdiction were confronted was that many probate judges were not lawyers and it seemed an unnecessary waste of time to require a full hearing on an equity matter when the result would not be final and an appeal would be taken to the district court almost as a matter of course. G. S. 1945 Supp. 59-2402, was not often referred to because in most of the cases the final result was to hold that the probate court had jurisdiction. That section provided that only questions of which the probate court did not have jurisdiction could be certified to the district court for determination. We mentioned it in *Erwin v. Erwin,* supra, although a construction of it was not necessary to a decision of the question involved.

*In re Estate of Weeks,* 154 Kan. 103, 114 P. 2d 857, was a case where a will left some property in trust to a city in a foreign country. The legality of the bequest was questioned. We approved the action of the probate court in certifying the question to the district court. The section was mentioned also in *Egnatic v. Wollard,* supra, although not construed, also in the specially concurring opinion of *Shively v. Burr,* supra.

As the time approached for the legislature to meet for its session of 1945 we had held that probate courts had exclusive original jurisdiction in many matters over which they had not had such jurisdiction prior to the enactment of the probate code, being chapter 180 of the Laws of 1939. Lawyers being constituted the way they are, it was inevitable that some attempt would be made to amend the code. The enactment of chapter 237 of the Laws of 1945 was the result. We have already shown that section 1 of that chapter is now G. S. 1945 Supp. 59-2402a. The section provides for the transfer of certain matters to the district court by the probate court upon the request of any interested party. Thus we see that instead of the probate court having power or authority to certify a question to the district court only when it arose in the administration of an estate and was a question over which the probate court did not have jurisdiction, under G. S. 1945 Supp. 59-2402a, certain matters may be transferred to the district court on the pe-

tition of an interested party even though these matters may be such as the probate court has jurisdiction to decide. The result is that when as to these matters one of the parties deems it advisable to have his matter tried by a district court in the first instance he may by filing a petition requesting it, cause his matter to be transferred to the district court, there to be tried for the first time unless it comes within the exceptions named in the statute. Such is just what the executor sought to do in these cases. If the matters covered by the various petitions were not within the exceptions stated in the statute, then the lower court was correct and the judgments should be affirmed. If they were, then the judgments should be reversed. As we have shown, many different situations arise during the administration of an estate. Fortunately we only have to decide one of them at a time.

Let us read the section this way first—"when a petition . . . shall be filed in the probate court, any interested party may request that transfer of such matter to the district court."

Had the question been that simple we would not have this appeal here. The legislature thought, however, that there were certain matters which an interested party should not be able to cause to be transferred to the district court until they had first been tried in the probate court. Hence the exceptions named in the statute. Appellants do not claim their matter is for the allowance of a demand nor for the admission to probate of a last will nor to grant or revoke letters testamentary or of administration. They do argue that their petitions are to determine the heirs, devisees and legatees of a decedent. They argue that for the purpose of this appeal G. S. 1945 Supp. 59-2402, should be read as though it provided that— "when a petition except a petition . . . to determine the heirs, devisees and legatees of a decedent . . . shall be filed in the probate court, any interested party may request the transfer of such matter to the district court." They argue theirs is such a matter, hence it is excepted by the provisions of the statute and must be tried before the probate court first.

The executor argues here first that the petitions all are in reality will contests. He points out that one of the exceptions in G. S. 1945 Supp. 59-2402a, is petitions for the "admission to probate of a last will." They argue that when the legislature included a will it clearly intended that a will contest petition should be transferred to the district court on application of an interested party. In this

connection the executor points out what we have said many times since the probate code was adopted, that any proceeding which had for its objective the causing of property of a decedent to pass in any manner other than provided in the will was a will contest.

The executor also points out that we have also held an action against a decedent's estate in process of administration for specific performance of an oral contract to convey land, which is part of the estate, by a deed to be a demand. The executor argues that if we should treat these petitions as demands, then since the exception only applies to demands for less than five hundred dollars it would be incumbent on the petitioners to show their demand was for less than five hundred dollars in order to prevent this transfer, which, of course, they cannot do since the petitions show on their faces they are for more than that.

The executor next deals with the exception of a petition to "order the distribution of estates or to determine the heirs, devisees and legatees." The executor attempts to couple with the foregoing the exception in the section of petitions to settle the accounts of executors and administrators. He argues that this coupling shows that the distribution referred to is the final distribution at the close of the administration and the determination of the matters pleaded in the petitions we have here could not be involved in the final distribution. The executor also argues that the petitions could not come within the exception of a petition to determine the heirs, devisees and legatees of the decedent because while the daughters are heirs, they are not making their demands as heirs, but as strangers, and any relief they are accorded will not be as heirs but because they have a contract right.

The executor places undue reliance on the relative position in the section of the various clauses stating the different exceptions. We considered G. S. 1945 Supp. 59-2402a in *In re Estate of Duel,* 161 Kan. 593, 171 P. 2d 271. There a petition for administration on an estate had been filed in probate court and a written defense filed by an interested party. On motion of the party filing the petition the matter was transferred to the district court pursuant to the provisions of G. S. 1945 Supp. 59-2402a. Motion of the objector to remand was denied. On appeal we held that the district court was without jurisdiction and the motion to remand should have been sustained. In dealing with the language of the section we said:

"Eliminating language inapplicable to our factual situation the section

simply reads: 'When a petition, except a petition to grant letters of administration, shall be filed in the probate court, any interested party may request the transfer of such matter to the district court." (p. 595.)

The effect of the above holding is much as though the section read: "When a petition, except a petition to determine the heirs, devisees, and legatees of decedents." The same may be said of the other petitions to which reference is made in the section. For instance it might be read: "When a petition, except a petition . . . to direct and to control the official acts of executors and administrators . . . or a petition to settle their accounts and to order the distribution of estates." Actions in the clauses described in a proceeding which the legislature deemed it wise so to require should be first tried in the probate court. We find nothing in any of our decisions leading up to the enactment of this section nor in the section itself to indicate that the petition to determine the heirs, devisees and legatees excepted from the general provisions of the statute was intended only to be a petition filed at the winding up of the estate. Should the prayer of the petitioners be finally allowed the effect as to the Kansas real estate would be that the two daughters of Hinshaw would be his devisees and legatees rather than his grandchildren. There can be no question about that. It cannot be gainsaid, therefore, that the petition filed by Maurine H. Dion and Donna Featherman and that filed by Fairy Heylmun are petitions to determine "heirs, devisees and legatees" of O. G. Hinshaw, the decedent. Such being the case, the petition was excepted from the general provisions of the statute. A sound argument could be made that it is also a petition "to direct and to control the official acts of executors and administrators." We prefer to place the decision on the exception already noted, however.

As to the petition of Myers, guardian for the minors, and Maurine H. Dion and Donna Featherman, that is in reality a petition for the approval of a contract whereby the litigation pleaded in the other two petitions was settled. The same reasoning that holds the exception already mentioned applies to the other two applies to that.

It need not be placed upon that ground alone, however. We considered a family settlement which was actually a contract to compromise litigation growing out of an estate in *Erwin v. Erwin,* supra. The question there was whether the probate court had jurisdiction at all to approve or disapprove a family settlement. The contract was much the same sort of a contract as the one we are considering.

We held the probate court did have jurisdiction to approve it. In doing so we said:

"Of course, it was not necessary to have any contract of family settlement in order to obtain a decree of final settlement and distribution. When, however, such a contract, conceded to be valid, was in fact executed, it then became necessary to have that contract submitted to and approved by the probate court in order to obtain a decree of settlement and distribution in accordance with the terms of that contract. The probate court has exclusive jurisdiction of the final settlement and distribution of decedent estates." (p. 706.)

Again we said:

"Moreover, the parties by paragraph 15 of the contract, also previously noted, expressly agreed to effect a quick and proper settlement of the estate in accordance with the terms of the agreement. Compliance with that agreement could not have been effectuated better by the administratrix than by doing exactly what she did, namely, by petitioning the probate court to make distribution of the estate in accordance with the contract of settlement. We think the contract contemplated just that and did not contemplate the contract should become the source of possible later litigation. The express purpose of contract was to adjust, compromise and settle the claims of the heirs in order to restore the confidence, friendship and affection which had existed during the lifetime of decedent." (p. 707.)

Not much more than the above excerpts from that opinion need be used to demonstrate that we considered a petition for approval of a family settlement of an estate as being actually a petition to control the official acts of an administrator and also one to determine heirs, legatees and devisees of a decedent. No reason appears now why we should not follow that reasoning.

In construing and applying G. S. 1945, 59-2402a, we shall examine the section and consider it with the view of ascertaining what is the general result sought by the petition in question and what was the broad general intention of the legislature rather than a narrow, technical construction of the language used. We have gone a long way in holding that the probate code broadened and amplified the original exclusive jurisdiction of probate courts. Only where a newly enacted statute clearly requires it will we take away from probate courts that jurisdiction and power. We have concluded, therefore, that the petition for a family settlement or to compromise the litigation pleaded in the other petitions was not within any of the exceptions in the statute.

Since we have reached that conclusion as to all three petitions, they are in the same condition as though they had been filed origi-

nally in the district court. That court does not have jurisdiction to hear and determine the matters involved. In the briefs here the parties argue at length as to the merits of the questions presented. We shall not consider these questions here. They must first be presented to the probate court. See the long line of opinions construing the probate code already set out herein.

The trial court erred in refusing to remand the three petitions to the probate court and in entering judgment on the merits on the petition for approval of the family settlement.

The judgments in appeal numbers 37,069 and 37,096 are each reversed, and the trial court is directed to transmit the record in each one to the probate court for proper action.