**Daniel R. BROOKS, a minor, by his next friend, Daniel P. Brooks, Jr., et al., Plaintiffs,**

v.

**NATIONAL BANK OF TOPEKA, Executor of the Estate of William A. Van Winkle, Defendant.**

**Civ. A. Nos. 265, 267–270.**

United States District Court
W. D. Missouri,
Chillicothe Division.
June 10, 1957.

George V. Aylward, Jr., Solbert M. Wasserstrom, Kansas City, Mo., for plaintiffs.

Rogers, Field, Gentry & Jackson, Kansas City, Mo., for defendant.

DUNCAN, Chief Judge.

The plaintiffs are all residents of the State of Florida. The defendant is a resident of the State of Kansas.

Plaintiffs seek to recover damages as a result of a collision between an automobile which was being operated by one of the plaintiffs, and an automobile owned and operated by William A. Van Winkle, in Caldwell County, Missouri, in which Van Winkle was killed. Following the death of the said William A. Van Winkle, the National Bank of Topeka, Kansas, was duly appointed executor of his estate, and thereafter the plaintiffs instituted suit in the Circuit Court of Caldwell County, Missouri, and obtained service upon the defendant in accordance with the provisions of § 506.210, V.A.M.S., commonly referred to as the "Long-Arm Service Statute".

The cases were removed to this court, where the defendant has filed a Motion to Dismiss, alleging that the Act, insofar as it authorizes service outside of Missouri upon nonresident legal representatives, is unconstitutional, as a violation of due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States, and Article I § 10 of the Constitution of the State of Missouri, V.A.M.S. There being common questions of law involved, the cases were consolidated for the purpose of this motion.

Section 506.210 supra, under which service was had, provides:

"The use and operation of a motor vehicle or trailer in this state on the public highways thereof by a person who is a nonresident of this state shall be deemed:

"(1) An agreement by him that he, his executor, administrator or other legal representative shall be subject to the jurisdiction of the courts of this state in all civil actions and proceedings brought against him, his executor, administrator or other legal representative by either a resident or a nonresident plaintiff, for damages to person or property, including actions for death, growing or arising out of such use and operation; and

"(2) An appointment by such nonresident, his executor, administrator or other legal representative of the secretary of state of Missouri as his lawful attorney and agent upon whom may be served all process in suits pertaining to such actions and proceedings;

"(3) An agreement by such nonresident that any process in any suit so served shall be of the same legal force and validity as if personally served in this state."

The initial long arm service statute in Missouri was enacted in 1941. Section 8410.1, Mo.R.S.A. It did not provide for service upon the executor, administrator or other legal representative of a nonresident who had been killed as a result of the operation of a motor vehicle upon the highways of Missouri.

However, in 1949, the legislature amended § 537.020 applicable to actions for damages by adding paragraph 3, providing that:

"Where a nonresident of the state negligently causes such injury or death in this state, and such nonresident is killed or dies, the probate court of the county where the casualty occurred shall have power to appoint a representative of such deceased for the purpose of being sued and defending any such foregoing action herein."

The Supreme Court of Missouri, in Harris v. Bates, 364 Mo. 1023, 270 S.W. 2d 763, 768, held this amendment violative of the due process clause of the Constitution because it did not provide "for

any notice whatsoever to the nonresident 'legal representative' ".

Thereafter, in 1955, the legislature amended § 8410.1, supra, which had been recodified into § 506.210, V.A.M.S., by adding to its provisions the words "his executor, administrator or other legal representative". Although the amendment was enacted in 1955, the question of its validity, that is, does it conform to the due process clause, has not come before the appellate courts of Missouri. In the absence of any expression of the state court, with the exception of the Harris case, supra, this court must place its own interpretation upon the Act.

In deciding the Harris case, supra, the court was concerned solely with the validity of an Act which provided for the appointment of a local administrator or legal representative in the county where the cause arose when suit was brought by the injured party.

It is not quite clear to me whether that court meant to indicate what would conform to due process in the event the legislature should attempt to enact a statute for acquiring service of nonresident representatives. Even if this was its purpose, I think that the court's expression fails to point the way to any very definite course of judicial thinking beyond the question before it. The court said at page 769 (11–12):

"Statutes, the purpose of which is to subject the nonresident 'legal representative' of a *deceased* nonresident motorist to the jurisdiction of the courts of a state in an action arising out of such deceased's negligence in the use of the highways of that state, must contain 'all the procedural safeguards required for due process of law'. See Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876, 881 [4, 5], 18 A.L.R.2d 537; * *. The absence of a Missouri statute providing for adequate notification to the nonresident 'legal representative' of a deceased nonresident motorist compels the conclusion that (under plaintiff's own theory) Para-

graph 3 is violative of the said due process clause."

But the court goes further and states in a footnote (2) on page 769:

"As, upon the instant record, Bates was not the owner of property in Missouri when he died, we are not now concerned with any Missouri statutes relating to service of process upon the nonresident administrator or executor or other 'legal representative' of a deceased nonresident motorist in an ancillary administration or other in rem action."

In its final analysis, I think that the most that may be gained from the opinion is that due process of law must be observed. While the court stands firm for the principle of due process, it does not concern itself with a definite standard which would meet the requirements of due process should the state seek to impose liability upon a nonresident representative over whom it has no control, jurisdiction, or supervision. There was, of course, no necessity to go beyond the general due process standard since, as is noted supra, the narrow question then before the court did not require further expansion of the court's position.

All of the states of the Union now have laws requiring nonresident motorists using their highways to agree to the appointment of some agency of the state as their representative for service of process in civil actions, arising out of the use of the highways. Such laws have been recognized as valid extensions of the police power of the states. Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091.

Several states, including Missouri, have extended these laws to nonresident administrators, executors or legal representatives. Undoubtedly, the weight of authority to be found in these jurisdictions favors the validity of these service statutes. In each state, save one, where the validity has been questioned, they have been upheld. Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876; Oviatt

v. Garrettson, 205 Ark. 792, 171 S.W.2d 287; Ploppa v. DuPre, 327 Mich. 660, 42 N.W.2d 777; Tarczynski v. Chicago, M., St. P. & P. R. Co., 261 Wis. 149, 52 N.W. 2d 396; Guerra DeChapa v. Allen, D.C. Tex., 119 F.Supp. 129.

Courts within this Circuit have considered this question in two instances in recent years. In 1941, the Supreme Court of Arkansas in Oviatt v. Garrettson, supra, held such an act to be a valid exercise of the state's police power. The question there considered was whether the agency, created by the consent of the nonresident motorist, for purpose of service, should terminate with the death of the motorist in accord with the general rule of agency. The court held that the general rule was not applicable under the conditions of the statute since the purpose in enacting it was to continue the rights of plaintiffs when the nonresident motorist was himself deceased by virtue of use of the highways.

In Knoop v. Anderson, D.C.Iowa, 71 F.Supp. 832, involving the validity of an identical Iowa statute, Judge Graven wrote an extended and unusually well considered opinion in which he reviewed the whole theory of liability and responsibility of administrators and executors, and their amenability to process outside of the state of their appointment. He came to the conclusion that the Iowa statute was unconstitutional in that the administrator's capacity existed solely within the appointing state, and that an attempt by Iowa to impose its sovereignty upon South Dakota was an invalid extension of its police power. A footnote to the opinion indicates that the Iowa legislature subsequently amended the Act to provide for service and suit against the liability insurance carrier authorized to do business in the state.

The reasoning in Knoop v. Anderson, supra, was subject to analysis by the United States Court of Appeals for the 7th Circuit in Feinsinger v. Bard, 195 F.2d 45, which involved the validity of the Wisconsin service statute. It was a case of first impression in Wisconsin, and the court upheld the statute, a position which was later taken by the Wisconsin Supreme Court in Tarczynski v. Chicago, M., St. P. & P. R. Co., supra. One determinant in the opinion by Chief Judge Major was the belief that the state court would do likewise in the event the question should be presented to it. In that respect, the court stated, 195 F.2d at page 47:

"True, the Wisconsin Supreme Court has not directly passed upon the provision in controversy but in view of State ex rel. Ledin v. Davison, 216 Wis. 216, 256 N.W. 718, 96 A.L.R. 589, there is every reason to believe that it will sustain the provision when the question is presented. In that case, the court held that a statute which authorized service upon a non-resident motor vehicle operator was not applicable to the administrator of such operator's estate, but at the same time set forth specifically and in detail the phraseology of an amendment which would evidence legislative intent to authorize service upon the personal representative of a deceased motorist. Thereafter, the Wisconsin legislature specifically and verbatim adopted the phraseology suggested by the Supreme Court in the form of the provision as it now exists. It hardly seems likely that the Supreme Court would now hold unconstitutional a legislative enactment made in conformity with the precise suggestion which it made."

In comparing the Knoop case, supra, and declining to follow it, the Court further said:

"Bard relies heavily upon Knoop v. Anderson, D.C., 71 F.Supp. 832, which admittedly is the only case in support of her contention. We agree that the court in that case gave the question careful and extended consideration, but we think the reasoning is unsound and, in any event, it is, as we have shown, contrary to the weight of authority."

In general, the weight of authority which the court in the Feinsinger case,

supra, alludes to, is based upon the reasonableness of notice given and the fact that the agency created is a special type which is not terminated by virtue of the death of the motorist. These cases unequivocally reject the necessity of considering questions of full faith and credit with respect to enforcement of judgments acquired under such a service statute. This latter fact is an explanation for such a wide difference of opinion between the Feinsinger case and Knoop v. Anderson, supra, since Judge Graven was of the opinion that the full faith and credit question went hand in hand with a determination of whether or not the Iowa statute guaranteed due process of law.

Judge Aldrich, of the District Court for Massachusetts, in Derrick v. New England Greyhound Lines, 148 F.Supp. 496, 497, the most recent expression on this subject, intimates that the question of extraterritoriality by virtue of a service statute involves much more than reasonableness of notice or continuation of an agency. In that case the plaintiff attempted service upon a nonresident Connecticut administrator even though the Massachusetts statute did not authorize any form of substituted service upon the nonresident representative. With reference to this question, the court stated:

"This is not a case where the administrator is sued for an act of his own, as, for instance, where he is carrying on a business and the cause of action arises out of his own operation. [Citation omitted.] Here defendant did nothing, and he is liable, if at all, only in his representative capacity. This he does not possess in Massachusetts.

"There is nothing in G.L. Ch. 90, § 3A which changes this. That section is to permit valid service of process on nonresidents, and does not purport, even if it could,. to create substantive liability, or to confer extra capacity upon a foreign administrator. * * * Plaintiff's problem is not one of physical jurisdiction over the person of the administrator. The difficulty is that even if he were present and served he represents the estate only to the extent of his Connecticut appointment, i. e., not at all, as it has no extraterritorial effect. Chapter 90 is not a substitute for ancillary administration." (Emphasis supplied.)

The preceding is suggestive of the reasoning in Knoop v. Anderson, supra, which I believe applicable in the present controversy. If the domiciliary state retains jurisdiction over estates therein, coextensive with its boundaries, I cannot accept the position that so long as the Missouri statute affords adequate notice, the statute is a valid extension of the police power without a consideration of its extraterritorial effect and the full faith and credit question.

In Kansas, the state has plenary power with respect to the administration of all property of deceased persons within its jurisdiction. Thompson v. Parnell, 81 Kan. 119, 105 P. 502, 507; Moore v. Jordan, 36 Kan., 271, 13 P. 337, 339. Furthermore, only the probate court of the county of residence, in the present action Riley County, is competent to administer the estate of the resident decedent. In re Hinshaw's Estate, 164 Kan. 550, 190 P. 2d 386; In re Summerfield's Estate, 158 Kan. 380, 147 P.2d 759, 761; Egnatic v. Wollard, 156 Kan. 843, 137 P.2d 188. Filing of claims thereto is regulated by provisions of Chapter 59, Kansas Revised Statutes.

It is suggested that if we were to consider this action as more in the nature of an in personam action to establish a claim against the estate, that jurisdiction might attach even though the estate as an entity can only exist in Kansas. Under Kansas law the executor serves only as a fiduciary. In re Anderson's Estate, 175 Kan. 18, 259 P.2d 180, 182, and even when designated as such in the will of the decedent, is subject to appointment and control of the probate court. In re Snyder's Estate, 179 Kan. 252, 294 P.2d 197; In re Grattan's Estate, 155 Kan. 839, 130 P.2d 580, 588. At best, he is a trustee or agent whose pow-

ers are coextensive with those of Kansas. Allbert v. Allbert, 148 Kan. 527, 83 P.2d 795, 799; Limekiller v. Hannibal & St. J. R. Co., 33 Kan. 83, 5 P. 401.

In this light, it is difficult to envisage the situation where the executor could be held liable to an *in personam* action when the action runs to a capacity created by and subject to, the authority of another state. So far as Missouri is concerned, he is no more than individual for the purpose of action, and I can see no claim which can be alleged which justifies the application of § 506.210, supra. Surely, a Kansas Court, when faced with a judgment in favor of plaintiffs in this action cannot be expected to bow to the Missouri fiat that jurisdiction over the executor was properly acquired.

The same is true *a fortiori* in the cause of action against the estate itself. The estate is clearly subject to the jurisdiction of Kansas. In re Summerfield's Estate, Limekiller v. Hannibal & St. J. R. Co., supra. Furthermore, after death, a claim running to an individual based upon his negligence ceases, and the action must be brought against the executor or administrator in its representative capacity with respect to the estate. Smith v. Dodge City Rendering Co., 175 Kan. 243, 263 P.2d 237; Egnatic v. Wollard, supra.

I am in accord with Wuchter v. Pizzutti, supra, as an expression of the reasonable extension of the police power. On the other hand, I do not subscribe to the theory that the police power may be so extended as to conflict with other principles of law inherent in our system of government. So long as we retain notions of state sovereignty, the states and plaintiffs therein are bound to recognize and comply with the superior power of the domiciliary state in the administration of estates within its borders. In accord, therefore, I am of the opinion that § 506.210, supra, insofar as it provides for service upon foreign representatives, is an invalid extension of the police power of the State of Missouri, and that the defendant's Motion to Dismiss must be, and is hereby, sustained.