251 F.2d 37
 Daniel R. BROOKS, a minor, by his next friend, Daniel P.
Brooks, Jr., Douglas M. Brooks, a minor, by his next friend,
Daniel P. Brooks, Jr., and Sandra F. Brooks, a minor, by her
next friend, Daniel P. Brooks, Jr., Appellants,
v.
NATIONAL BANK OF TOPEKA, Executor of the Estate of William
A. Van Winkle, Appellee.
Douglas M. BROOKS, a minor, by his next friend, Daniel P.
Brooks, Jr., Appellant,
v.
NATIONAL BANK OF TOPEKA, Executor of the Estate of William
A. Van Winkle, Appellee.
Sandra F. BROOKS, a minor, by her next friend, Daniel P.
Brooks, Jr., Appellant,
v.
NATIONAL BANK OF TOPEKA, Executor of the Estate of William
A. Van Winkle, Appellee.
Daniel R. BROOKS, a minor, by his next friend, Daniel P.
Brook, Jr., Appellant,
v.
NATIONAL BANK OF TOPEKA, Executor of the Estate of William
A. Van Winkle, Appellee.
Daniel P. BROOKS, Jr., Appellant,
v.
NATIONAL BANK OF TOPEKA, Executor of the Estate of William
A. Van Winkle, Appellee.
 Nos. 15819-15823.
 United States Court of Appeals Eighth Circuit
 Jan. 10, 1958, Rehearing Denied March 7, 1958.
 
 Solbert M. Wasserstrom, Kansas City, Mo (George V. Aylward, Jr., Kansas City, Mo., was with him on the brief), for appellants.
 Charles L. Carr, Kansas City, Mo. (Clay C. Rogers and Rogers, Field, Gentry & Jackson, Kansas City, Mo., were with him on the brief), for appellee.
 Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 These are appeals from a final judgment dismissing five consolidated actions for want of jurisdiction. The dismissal is based upon the court's determination that section 506.210, V.A.M.S., commonly referred to as the 'Long-Arm Service Statute,' insofar as it provides for substituted service upon a foreign executor of a nonresident motorist, is unconstitutional, and hence the service of process pursuant thereto does not confer jurisdiction over the defendant in these cases. The court's opinion is reported at 152 F.Supp. 36.
 
 
 2
 Plaintiffs are all residents of Florida. The defendant executor is a resident of Kansas. Diversity of citizenship and the jurisdiction amount are established.
 
 
 3
 Plaintiffs in their petitions seek damages for the wrongful death of Mrs. Brooks and for personal injuries sustained by other members of the Brooks family. It is alleged that the damages sued for were the result of a collision occurring on December 17, 1955, in Missouri, between the Brooks automobile and an automobile operated by William Van Winkle. It is alleged that the negligence of Van Winkle in the operation of his automobile upon the missouri highway was the proximate cause of plaintiffs' damages. Van Winkle died on December 19, 1955, and on said date and prior thereto was a resident and citizen of the State of Kansas. His will was admitted to probate by the Probate Court of Riley County, Kansas, and defendant was by said court appointed executor of Van Winkle's estate on January 16, 1956. Defendant duly qualified as executor and published notice of its appointment pursuant to Kansas law commencing January 17, 1956. No claim was filed against the Kansas estate by any of the plaintiffs. No ancillary probate proceedings on the Van Winkle estate have been commenced in Missouri.
 
 
 4
 The petitions here involved were all filed in the Circuit Court of Caldwell County, missouri, in December 1956, and during the same month process in each action was served upon the Missouri secretary of state who, in turn, mailed notice of said service to the defendant. Notice of service in all of these suits was received by the defendant at Topeka, Kansas, by mail on or before December 20, 1956. The service upon the defendant was made in strict compliance with section 506.210. No contention is made to the contrary.
 
 
 5
 The five cases were removed by the defendant from the State court to the Federal District Court for the Western District of Missouri, and thereafter, upon defendant's motion, the five cases were consolidated for the purpose of filing and determination of defendant's consolidated motion to dismiss.
 
 
 6
 The basic issue presented by these appeals is whether section 506.210 is unconstitutional insofar as it confers jurisdiction over the foreign executor of a noresident motorist. The claim of unconstitutionality is based upon defendant's contention that the due process guaranteed by Amendments V and XIV of the Federal Constitutional and Article I Section 10, of the Missouri Constitution, V.A.M.S., has been violated.
 
 
 7
 The statute upon which jurisdiction is here based, section 506.210, V.A.M.S., reads:
 
 
 8
 'The use and operation of a motor vehicle or trailer in this state on the public highways thereof by a person who is a nonresident of this state shall be deemed:
 
 
 9
 '(1) An agreement by him that he, his executor, administrator or other legal representative shall be subject to the jurisdiction of the courts of this state in all civil actions and proceedings brought against him, his executor, administrator or other legal representative by either a resident or a nonresident plaintiff, for damages to person or property, including actions for death, growing or arising out of such use and operation; and
 
 
 10
 '(2) An appointment by such nonresident, his executor, administrator or other legal representative of the secretary of state of Missouri as his lawful attorney and agent upon whom may be served all process in suits pertaining to such actions and proceedings;
 
 
 11
 '(3) An agreement by such nonresident that any process in any suit so served shall be of the same legal force and validity as if personally served in this state.'
 
 
 12
 It is pointed out in the trial court's opinion that the original Missouri long arm service statute enacted in 1941 made no provision for service upon executors or administrators of a nonresident motorist. In the absence of such a provision it is generally held that the long arm statute does not reach a foreign executor. See cases collected, Note 53 A.L.R.2d 1164, 1194. In 1949 the Missouri legislature amended the statute to authorize the probate court of the State in which the accident occurred 'to appoint a representative of such deceased for the purpose of being sued.' V.A.M.S. 537.020. The Missouri Supreme Court held such amendment violated the due process clause of the Constitution because it did not provide for adequate notice upon the nonresident legal representative. Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763; Crump v. Treadway, Mo., 276 S.W.2d 226. We find nothing in either of these cases which has a direct bearing upon our present issue. The court in neither of said opinions indicates any hostility to the public policy underlying the enactment of the long arm statute.
 
 
 13
 The present provisions for service upon executors, contained in the statute hereinabove quoted, were enacted by the Missouri legislature in 1955 and were in effect at the time of the accident out of which the present suits arose. The constitutionality of the 1955 amendment has not been passed upon by the Supreme Court of Missouri.
 
 
 14
 The highest courts of State having statutes similar to the Missouri statute providing for jurisdiction over executors of nonresident motorists having accidents within the State have uniformly upheld the constitutionality of such statutes. Oviatt v. Garretson, 205 Ark. 792, 171 S.W.2d 287; Plopa v. Du Pre, 327 Mich. 660, 42 N.W.2d 777; Tarczynski v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 261 Wis. 149, 52 N.W.2d 396; Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876, 18 A.L.R.2d 537. The Court of Appeals for the Seventh Circuit upheld the constitutionality of a similar Wisconsin statute. Feinsinger v. Board, 7 Cir., 195 F.2d 45. In a Note upon the constitionality of extensions of long arm statutes to reach the executor of a nonresident motorist in 18 A.L.R.2d 544, 545, it is stated:
 
 
 15
 'Attacks upon the statutes providing for substituted service upon the personal representatives of nonresident motorists have followed two main lines: (1) the contention that since the validity of the substituted service is based, at least nominally, upon the motorist's consent, involving the fact or fiction of an agency, it must necessarily be revoked by his death, and (2) the contention that while substituted service may be justified as due process, under the police power, in the action against the motorist himself, which is transitory and in personam, the same does not hold true as to an action against his estate through his personal representative, which is in the nature of an action in rem, creating a right against property wholly within another jurisdiction. To date, all the state courts which have considered the matter have upheld the validity of the statutes.'
 
 
 16
 The only case reaching a contrary result is Knoop v. Anderson, D.C.N.D. Iowa, 71 F.Supp. 832. That case involved the constitutionality of the Iowa long arm statute as applied to the administrator of a nonresident motorist. The history of the development of the long arm statute is fully discussed. The court also discussed in considerable detail the effect that must be given a judgment entered against a nonresident executor pursuant to a long arm statute by the State of domiciliary probate. The court reaches the conclusion that the state of domicile would not be required to give full faith and credit to such a judgment, and largely upon such basis decides the statute is unconstitutional insofar as it pertains to service upon nonresident executors.
 
 
 17
 The defendant urges that the agency created by a nonresident motorist driving in the State of suit is terminated by the principal's death. This contention is authoritatively answered by the Supreme Court in Young v. Masci, 289 U.S. 253, 259-260, 53 S.Ct. 599, 601, 77 L.Ed. 1158, as follows:
 
 
 18
 'The power of the state to protect itself and its inhabitants is not limited by the scope of the doctrine of principal and agent. The inadequacy of that doctrine to cope with the menacing problem of practical responsibility for motor accidents has been widely felt in cases where the injurious consequences are the immediate result of an intervening negligent act of another. * * * No good reason is suggested why, where there is permission to take the automobile into a state for use upon its highways, personal liability should not be imposed upon the owner in case of injury inflicted there by the driver's negligence, regardless of the fact that the owner is a citizen and resident of another state. * * *' In Leighton v. Roper, supra (300 N.Y. 434, 91 N.E.2d 881), the court states:
 
 
 19
 'It is urged that the decedent's designation of the Secretary of State was not binding because the agency created by the statute terminates on the death of the principal. But this is to ignore not only the fact that it was an agency created, not for the benefit of the principal, but for the benefit of third persons, Restatement, Agency, 120, 139, as well as the State, in the orderly regulation of its highways, and the additional fact that the Legislature has seen fit to make the agency irrevocable, thus annulling any common-law rule to the contrary. * * *'
 
 
 20
 To the same effect see Oviatt v. Garretson, supra; Plopa v. Du Pre, supra.
 
 
 21
 The statute we are considering clearly expresses the legislative intention that the nonresident motorist, in exchange for the provilege of using the highways of the State, agrees that the Missouri court has jurisdiction over him and his executor for any damage the motorist may cause in the use of such highways, and that such nonresident motorist agrees that the secretary of state shall be a process agent for the purpose of service upon him or his legal representative. The State of Missouri, in passing and amending the statute, was acting under its proper police power and is not limited by the ordinary rules of agency and contracts. It is not reasonable to suppose that in passing the statute the legislature contemplated that death would terminate the agency. Such an interpretation would be in direct conflict with the plain meaning of the words used in the statute.
 
 
 22
 It is well established that long arm statutes conferring jurisdiction upon the courts of States where an accident occurred over a living nonresident motorist are valid. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. The public policy underlying the validity of such a statute is thus stated (274 U.S. at page 356, 47 S.Ct. at page 633):
 
 
 23
 'Motor vehicles are dangerous machines, and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresidents alike, who use its highways. The measure in question operates to require a nonresident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. Under the statute the implied consent is limited to proceedings growing out of accidents or collisions on a highway in which the nonresident may be involved. * * *'
 
 
 24
 Our question then is whether this public policy extends to the foreign executor of the deceased nonresident who was involved in a motor vehicle accident in the State where suit is pending. We believe that it does. In many situations the death of a nonresident motorist results from accident injuries. Obviously, a collision which causes the death of one or more of the occupants of the automobiles involved in the collision is a more serious type of accident. If public policy requires that jurisdiction over the nonresident motorist exists in cases in which such motorist survives, it is apparent that the same public policy for protection of the residents of the State against the negligent driving of the nonresident motorist would exist in the case of serious accidents causing loss of life.
 
 
 25
 The question still remains whether the grant of jurisdiction over the personal representative of the nonresident motorist so seriously conflicts with the law with reference to the administration of estates as to warrant a denial of the right.
 
 
 26
 Defendant contends that it has no power, authority, or capacity to act as executor except in the State of Kansas and that it can not be sued in Missouri. Defendant's contentions in this respect are fully discussed and supported in Knoop v. Anderson, supra. It is entirely true that the Kansas Probate Court has exclusive jurisdiction over the administration of decedent's property situated in the State of Kansas.
 
 
 27
 The cases heretofore cited upholding the constitutionality of statutes similar to the one we are here considering have all rejected the constitutional attack here made. In Plopa v. Du Pre, supra, the court, after discussing Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, and Brown v. Fletcher's Estate, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966, both of which are relied upon by the defendant, states (42 N.W.2d at page 780):
 
 
 28
 '* * * That holding in the Pennoyer case, should present no more effective obstacle to a holding in the instant case that the process of this state may reach decedent's estate and its administrator in Ohio under the statute in question and the circumstances of this case, than it did to the holding in the Hess case that constructive service in one state can reach the person of a living nonresident in another state. The reason for both is to be found in what would appear to be the meaning of the Hess case, namely, that the rule laid down in the Pennoyer and Fletcher cases must and does yield to the reasonable exercise of the police power of a state in furtherance of public health, safety and welfare, regardless of whether such power operates upon persons or property in another state and irrespective of whether the action be in personam or in rem.
 
 
 29
 'No cogent reason appears for holding that the death of the nonresident motorist serves to so shackle the police power of the state as to prevent its accomplishment of that which it could attain in his lifetime. Defendant does not point out what specific right under the Constitution of the United States would be violated by the act in question which was not equally involved and similarly affected by the statute considered and upheld in the Hess case.'
 
 
 30
 The New York Court of Appeals in Leighton v. Roper, supra, states:
 
 
 31
 '* * * The fiduciary, whose estate has no res in our jurisdiction, was in the same position as a nonresident who had no property to be attached in this State, and could not be personally served herein. But under Hess v. Pawloski, supra, such a defendant may now be served in the particular situation and in the manner provided in section 52 of the Vehicle and Traffic Law. It would seem to follow logically that his representative may likewise be served as provided by statute, without violating the rule of due process.
 
 
 32
 'Much has been said in favor of the immunity of foreign representatives in order to provide a system of orderly administration of estates, but the concept of jurisdiction over a decedent's estate in the field of estate law must yield in this case to the exercise by New York of its police power in a field undeniably its own, in the limited respect provided by section 52.'
 
 
 33
 Moreover, the cases just cited announce the view that the question of enforceability and the effect to be given any judgment obtained by substituted service against a nonresident executor in the State of the accident must be determined by the courts of the State where the probate proceeding is pending.
 
 
 34
 In McGee v. International Life Ins. Co., 78 S.Ct. 199, 201, the Supreme Court, in a unanimous opinion, upheld the constitutionality of a California statute which subjects foreign corporations to suit in California on insurance contracts with residents of that State, even though such corporations can not be served with process within its borders. The Court discusses the evolution of the due process doctrine since the decision of Pennoyer v. Neff, supra, and states:
 
 
 35
 'Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.
 
 
 36
 '* * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 * * *.'
 
 
 37
 Our consideration of the cases hereinabove cited and discussed convinces us that the statute here involved is constitutional, and that the service made upon the defendant meets due process requirements.
 
 
 38
 It appears from plaintiffs' brief that Van Winkle carried liability insurance, and that plaintiffs can, after the adjudication of their claim, possibly reach such insurance by virtue of section 379.200, V.A.M.S., which provides:
 
 
 39
 'Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment.'
 
 
 40
 Defendant denies that relief under such statute would be available, citing section 513.075, V.A.M.S., which prohibits executions upon judgments against executors. Defendant contends that a judgment if rendered here would not be the type of judgment which would invoke the provisions of section 379.200.
 
 
 41
 It is probable that an accident victim is a party in interest to the insurance contract. Section 379.195 prevents the insurer and insured from canceling a policy after the insured has become responsible for a loss. Apparently there is no Missouri decision upon the question of whether, under the circumstances of this case, plaintiffs if here successful would be entitled to proceed under section 379.200, or otherwise, against the insurer. We need not here attempt to decide such question. Plaintiffs have indicated a possible source of relief without resort to the Kansas probate proceedings.
 
 
 42
 The likelihood that any liability that might be established will be paid by an insurer rather than the estate is mentioned in the Leighton case, supra. We do not base our decision in this case upon the availability of the liability insurance to protect the estate against loss. The cases heretofore cited from other jurisdictions, based upon a similar question, did not rely upon the availability of insurance. However, we feel that the existence of the possibility that liability insurance may be available is an additional reason for upholding the jurisdiction of the Missouri court as to the nonresident executor.
 
 
 43
 Defendant makes the final contention that the Kansas non-claim statute bars relief. The Kansas statute, G.S. 1949, 59-2239, requires the filing of claims within nine months after the first published notice to creditors, and further provides that claims not exhibited or filed within such period shall be forever barred. It is conceded that the nine months period allowed for filing claims has expired, and that no claims had been filed against the Kansas estate on behalf of the plaintiffs.
 
 
 44
 The Kansas non-claim statute has no extra-territorial effect and presents no bar to the present actions. Hagan v. Lantry, 338 Mo. 161, 89 S.W.2d 522, 527. The present actions were brought within the applicable Missouri limitations period.
 
 
 45
 Defendant's contention that an action barred in Kansas would be barred in Missouri under section 516.180, V.A.M.S., called the Missouri borrowing statute, is without merit. Said statute only provides that actions barred by the law of the State where the claim originated are also barred in Missouri. The statute does not apply here as the present causes of action all originated in Missouri.
 
 
 46
 If the plaintiffs should hereafter assert any rights against the Kansas estate, it will be for the Kansas court to determine the effect it will give the Kansas non-claim statute.
 
 
 47
 We conclude that section 506.210 is not vulnerable to the constitutional attack here made upon it. Accordingly, the judgment dismissing the petitions of the plaintiffs is reversed, and these cases are remanded.
 
 
 48
 A true copy.