STATE of Missouri ex rel. Edith SULLI-
VAN, Administratrix of the Estate of
Richard Sullivan, deceased, and Theresa
Plog, Administratrix of the Estate of Lo-
renzo Plog, deceased, Relators,

v.

The Honorable Gerald CROSS, Judge of the
Circuit Court of Andrew County,
Missouri, Respondent.

No. 46667.

Supreme Court of Missouri,

En Banc.

July 14, 1958.

Deacy & Deacy, Thos. E. Deacy, Kansas City, Ewing & Beavers, Joe Beavers, Maryville, for relators.

John W. Newhart, Savannah, Solbert M. Wasserstrom, Kansas City, for respondent.

EAGER, Judge.

This is a proceeding in prohibition filed initially in this court. The preliminary rule was issued largely because of the decision in Brooks v. National Bank of Topeka, D.C.W.D.Mo., 152 F.Supp. 36. The facts may be briefly stated. One Charles R. Reed, a resident of Missouri, was killed in an automobile accident on Nov. 24, 1956, in Andrew County, Missouri; the occupants of the other car, which allegedly collided with Reeds's car, were Richard Sullivan, the driver, and Lorenzo Plog, the owner, both of whom were in fact residents of Douglas County, Nebraska. On Feb. 18, 1957, Gail Evelyn Reed, the widow of Charles R. Reed, filed suit in the Circuit Court of Andrew County against "Theresa Plog, Administratrix of the Estate of Lorenzo Plog, deceased, and Edith Sullivan, Administratrix of the Estate of Richard Sullivan, deceased," (so designated in the caption of the petition) for damages arising from the death of her husband; she alleged negligence in some detail, alleged that the Plog car bore a specified Nebraska license plate, but failed to allege, specifically, the deaths of Sullivan and Plog (who were killed in the accident), their respective residences, or the appointments of their legal representatives. Plaintiff prayed, however, for an order of service on defendants as nonresidents "who were using the highways" of Missouri as provided in §§ 506.200 and 506.210, RSMo 1949, V.A.M.S. as amended. Summonses were issued to "Edith Sullivan, Administratrix" and "Theresa Plog, Administratrix"; these, together with copies of the petition, were served upon the Chief Clerk of the Secretary of State and returns of that service were duly made. The office of the Secretary of State sent to each of the defendants, by registered mail and at the address furnished, her respective summons and a copy of the petition, together with a notice to each, advising of the institution of the suit and of the service and the date thereof. The notice to Theresa Plog erroneously described her as "Administratrix of the Estate of Richard Sullivan, deceased." Neither defendant has denied receiving the summons, the copy of petition or the

notice. On July 8, 1957, the plaintiff filed an amended petition specifically alleging the residence of Sullivan and Plog, their deaths, and the appointment of their respective administratrices on Jan. 7, 1957. Copies of the amended petition were mailed to the attorneys who had, upon special appearances, filed motions to quash. Further service of process was supposedly had or attempted in Dec., 1957, after the issuance of our preliminary rule; we do not consider that, as it is no proper part of our record.

Both of the defendants (relators here), through counsel and on special appearances, filed motions to quash the returns of service or in the alternative to dismiss. The grounds therein stated are largely those contained in the "Points" of their present brief and need not be enumerated here. On Nov. 12, 1957, these motions were overruled, and defendants were given time to plead. The petition for a writ of prohibition followed, relators urging that the Circuit Judge had and has no jurisdiction to proceed.

■ The first point made here by relators is that the original petition of Mrs. Reed stated no cause of action and alleged no grounds authorizing the issuance of process. That petition was somewhat inept, but it is perfectly obvious that no one has been misled and that the petition was, in the respects questioned, subject to amendment. Relators are not entitled to prohibition on this ground "unless, under the admitted facts, petitioner cannot state a cause of action." State ex rel. Reed v. Harris, Banc, 348 Mo. 426, 153 S.W.2d 834, 836, and cases there cited. Certainly the omission to allege the deaths, the residence, and the appointments of administratrices was thus subject to amendment. Relators also suggest, in their argument, that the summonses were insufficient and that the Plog notice was addressed to Theresa Plog as Administratrix of the Sullivan estate. Considering together the copies of the petition, the summonses, the notices, and the actual receipt of these by the proper parties, the inaccuracies were not such as to invalidate the summonses or the notice, or to deprive the court of jurisdiction, if it otherwise had jurisdiction.

■ The substantive point made (actually as two or more points, here considered jointly) is that § 506.210, RSMo 1949, V.A.M.S., as amended in 1955 (Cum. Supp., 1957) is unconstitutional in so far as it purports to confer jurisdiction on Missouri courts over administrators or executors of the estates of nonresidents, because it violates the requirements of due process and the "Privileges and Immunities" section of Art. 4, U.S. Constitution, fails to give full faith and credit to the statutes and judicial proceedings of the State of Nebraska (Sec. 1, Art. 4, U.S. Constitution), and is not sufficiently specific in its terms.

Section 506.210, RSMo 1949, V.A.M.S. (to which revision all statutory references will be made except as noted), as originally enacted in 1941, provided for the first time a basis of jurisdiction in suits against nonresident motorists; it made no reference to executors or administrators of the estates of nonresident motorists, nor did § 506.240, the service section. However, § 537.020, relating to the survival of personal injury and death actions, provided (par. 3) that if a nonresident who had negligently caused injury himself died, the probate court of the county where the casualty occurred should have "power to appoint a *representative* of such deceased for the purpose of being sued and defending * * *." (Emphasis ours.) In Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763, it was held that neither this statute nor § 506.210 purported to authorize the appointment of a true personal representative of the assets of a nonresident decedent, or to subject such legal representative to suit; that such a cause of action could only survive against the legal representative; that § 537.020 provided for no notice to a nonresident legal representative, whereas the requirements

of due process required a notice "reasonably calculated" to reach him and afford him an opportunity to appear and defend, if, in fact, he was to be subjected to the jurisdiction of our courts; also, that the notice must be one prescribed by statute, and not a mere gratuitous notice. Thus, § 506.210 was held inapplicable to nonresident administrators or executors, and paragraph 3 of § 537.020 was held to be violative of due process. The latter section was amended in 1955 by eliminating that paragraph (Laws 1955, p. 780). In the case of Crump v. Treadway, Mo., 276 S.W. 2d 226, the court held that § 537.020 did not purport to authorize the appointment of a true legal representative and that a cause of action for personal injuries would survive only against such a representative.

In 1955 § 506.210 was amended to read as follows: "The use and operation of a motor vehicle or trailer in this state on the public highways thereof by a person who is a nonresident of this state shall be deemed: (1) An agreement by him that he, his executor, administrator or other legal representative shall be subject to the jurisdiction of the courts of this state in all civil actions and proceedings brought against him, his executor, administrator or other legal representative by either a resident or a nonresident plaintiff, for damages to person or property, including actions for death, growing or arising out of such use and operation; and (2) An appointment by such nonresident, his executor, administrator or other legal representative of the secretary of state of Missouri as his lawful attorney and agent upon whom may be served all process in suits pertaining to such actions and proceedings; (3) An agreement by such nonresident that any process in any suit so served shall be of the same legal force and validity as if personally served in this state." All wording therein referring to an "executor, administrator or other legal representative" was new.

With this background we look to the general state of the law. All of the states have nonresident motorist statutes; and the courts now hold, without exception, that these statutes are valid and not violative of due process, as concerns the nonresident motorist himself (Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; 18 A.L.R.2d 544, note) or his agent or bailee (Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158). As the litigation multiplied, however, sundry cases arose in which the nonresident motorist himself had been killed or had died pending suit. The early statutes did not cover that contingency; and the courts very generally held that in such event suit might not be maintained (or revived) against the foreign executor or administrator of the nonresident. 53 A.L.R.2d 1164; 61 Harvard Law Review 355; 57 Yale Law Journal 647. The theory usually thus adopted was that the statutes proceeded upon a theory of agency (i. e., the nonresident had appointed an agent for service) and that the agency terminated at the motorist's death. Much doubt has been cast upon the argument concerning "agency." See 61 Harvard Law Review 355, and the cases hereinafter discussed.

Considering the anomalous practical effect of permitting suits against living nonresidents but not against their estates (where the results may have been even more serious) various states amended their statutes to provide for jurisdiction over the administrator or executor of the nonresident. In the following cases such statutes have been held valid and constitutional as against attacks similar to those now made. Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876, 18 A.L.R.2d 537; Oviatt v. Garretson, 205 Ark. 792, 171 S.W.2d 287; Plopa v. DuPre, 327 Mich. 660, 42 N.W.2d 777; Feinsinger v. Bard, 7 Cir., 195 F.2d 45, and, last but not least, Brooks v. National Bank of Topeka, 8 Cir., 251 F.2d 37, reversing the judgment of the District Court shown at 152 F.Supp. 36, and construing the identical Missouri statutes with which we

are concerned here. Counsel attempt to distinguish our statutes from certain of the others, but the underlying principles of all the above cases are applicable here. These courts hold, in substance: that the state is not bound by the ordinary rules of common law agency and contract, but that in the exercise of its inherent police power it has validly declared the appointment for service irrevocable and binding upon the administrator; that such a matter affects not only the immediate parties but the public. In the Leighton case, supra, the court said (91 N.E.2d loc. cit. 881): "The statute is narrowly drawn to fit the need, provides all the procedural safeguards required for due process of law, and is applicable only to a cause of action arising in this State. Whatever may be said about the use of such a procedure in other situations, or 'generally, without restriction or qualification' where it might be argued that it would constitute an unjustifiable impingement upon the sovereignty of other States, is therefore inapplicable here.

"Much has been said in favor of the immunity of foreign representatives in order to provide a system of orderly administration of estates, but the concept of jurisdiction over a decedent's estate in the field of estate law must yield in this case to the exercise by New York of its police power in a field undeniably its own, in the limited respect provided by section 52 [Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71]."

In the Brooks case, supra, it was specifically ruled that our own § 506.210 was constitutional, the court saying, in part, at 251 F.2d loc. cit. 43: "Our consideration of the cases hereinabove cited and discussed convinces us that the statute here involved is constitutional, and that the service made upon the defendant meets due process requirements." So far as we are concerned, if the statute does not infringe the due process requirements of the Federal Constitution, there is no reason why it should be held to infringe the same provisions of the Missouri Constitution. The court in the Brooks case noted the "trend * * * toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents", discussing and quoting from the case of McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. The one case denying the validity and constitutionality of such a statute as to a foreign administrator is Knoop v. Anderson, D.C. Iowa, 71 F.Supp. 832. We have considered it, but in view of the array of authorities to the contrary, it is not persuasive. For a discussion of that case and of the subject generally see the article in 57 Yale Law Journal at page 647. In Feinsinger v. Bard, 195 F.2d 45, 48, the United States Court of Appeals for the Seventh Circuit said: "Bard relies heavily upon Knoop v. Anderson, D.C., 71 F.Supp. 832, which admittedly is the only case in support of her contention. We agree that the court in that case gave the question careful and extended consideration, but we think the reasoning is unsound and, in any event, it is, as we have shown, contrary to the weight of authority."

We are not impressed with relators' insistence that to permit a judgment against the administrators in Mrs. Reed's suit will deny full faith and credit to the Nebraska statutes and decisions. They cite statutes indicating that County Courts there have exclusive probate jurisdiction, with power to hear and determine all claims, power to fix the time for filing claims, and limiting the types of suits which may be filed against an executor or administrator. They also cite Nebraska cases (Rehn v. Bingaman, 151 Neb. 196, 36 N.W.2d 856; Flessner v. Wenquist, 156 Neb. 378, 56 N.W.2d 294; Mueller v. Shacklett, 156 Neb. 881, 58 N.W.2d 344) holding generally that the District Courts there have no probate jurisdiction, and that suits for personal injury or death may not be maintained against an administrator or executor by ordinary suit in

a District Court. Relators have alleged in their petition for the writ that the County Court of Douglas County, Nebraska, did, at the time of the appointments and in each estate, namely, on Jan. 8, 1957, enter an order requiring that all creditors present their claims on or before May 8, 1957, upon penalty of being forever barred; copies of said orders were attached. It is not claimed that Mrs. Reed presented her claim in that court.

In the case of Brooks v. National Bank of Topeka, 8 Cir., 251 F.2d 37, 43, the court said: "The Kansas non-claim statute has no extra-territorial effect and presents no bar to the present actions. Hagan v. Lantry, 338 Mo. 161, 89 S.W.2d 522, 527. The present actions were brought within the applicable Missouri limitations period." The proper Nebraska Court may determine the effect to be given there to a judgment, when and if Mrs. Reed obtains one, and when and if it is presented there. We do not attempt to prejudge its rulings, nor are we denying full faith and credit to Nebraska's statutes or decisions. Such seems to be the ruling of the other courts which have passed upon the point. Tarczynski v. Chicago, M., St. P. & P. R. Co., 261 Wis. 149, 52 N.W.2d 396; Brooks v. National Bank, supra; Feinsinger v. Bard, 7 Cir., 195 F.2d 45; 18 A.L.R.2d 544, note; Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876, 18 A.L.R. 2d 537. In the Feinsinger case the court said, in part, loc. cit. 48: " * * * the matter of the enforceability of the judgment in the instant suit in a court of New York must be determined there and not here. We reject the contention of Bard that the court was without jurisdiction." In this view it is wholly unnecessary for us to discuss the Nebraska statutes or cases.

■■■ Relators insist vigorously that, even assuming the constitutionality of our statute, the court is without jurisdiction because the statute does not provide for the appointment of a "local representative"

to defend the suit, and that a foreign administrator is powerless to act outside the state of his appointment. We note, first, that a cause of action for injury or death under our law survives only against the *legal representative* of a deceased tortfeasor, and not against some "local representative" who might be appointed for the purpose of suit. Crump v. Treadway, Mo., 276 S.W.2d 226; Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763. And a foreign executor or administrator is not wholly incapacitated to act in Missouri, for by statute (§ 507.020) such representatives have been authorized to sue in appropriate instances on claims arising under the law of another state since 1905 (Laws 1905, p. 95). The statute was revised in 1943 as a part of the Code of Civil Procedure. (Laws 1943, p. 353, Section 14.) True, it has been said, generally, that an administrator's powers do not extend beyond the boundaries of the state of his appointment (First National Bank of Corning, Ark. v. Dowdy, 175 Mo.App. 478, 161 S.W. 859; In re Thompson's Estate, 339 Mo. 410, 97 S.W.2d 93), presumably because he is in legal effect a mere arm of the appointing court. The basis of that rule seems to rest in a desire to enforce a centralized administration of the assets of a decedent (57 Yale Law Journal 647); and probably the actual reason for the rule was to prevent an administrator from removing assets from a foreign state to the detriment of creditors there (id.). While it is in no sense an authoritative precedent, we note the following from the article in 57 Yale Law Journal, at loc. cit. 652: "It must be remembered, moreover, that the rule denying existence to administrators beyond the territorial limits of the appointing state was not in its inception a rule of constitutional law, but merely a conflict of laws rule. This rule did not rest upon the absence of jurisdiction, but arose out of the unwillingness of the courts of one state to recognize an administrator appointed in another. The due process necessary to support the ac-

quisition of jurisdiction would appear to be no more than compliance with reasonable procedural safeguards, and the Supreme Court, in evaluating the due process aspects of state protective devices analogous to the territorially limited administrator, has put main emphasis on practical social expediency."

In permitting Mrs. Reed's suit to proceed we are not interfering with the Nebraska court's administration of these estates; the suit can establish no lien upon or title to any property. The rule of supposed limited territorial capacity must yield, at least in this specific instance, to the police power of the state as declared in the statutes. And we hold further that, in authorizing a suit against the foreign administrator in and by § 506.210, as amended, the legislature has also authorized the foreign administrator to come in (through counsel of his choice and in his name) and defend the action. It is not necessary to appoint a local representative to defend, nor for the statute to so provide. The supposed incapacity of the foreign administrator to appear and defend has been removed, so far as Missouri is concerned, in suits of this class. It would be unthinkable to authorize such suits and to forbid those who are thereby made defendants from appearing to defend. Missouri has twice frowned upon the appointment of a local "representative" to be sued and to defend. Crump v. Treadway, Mo., 276 S.W.2d 226; Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763. In the statutes of other states which we have examined we do not find any provision for the appointment of a local representative; certainly such an appointment could not, in itself, extend the capacity or powers of a nonresident administrator. Relators have relied in great part upon the case of In re Thompson's Estate, 339 Mo. 410, 97 S.W.2d 93, where the Missouri courts refused to recognize the validity of a Louisiana judgment as a claim against a Missouri probate estate. There are two distinctions to be noted: first, the court was considering there the allowance of the claim from the probate angle and as a charge against the assets, a matter which can only be considered in our situation by the Nebraska courts; the Missouri court will not purport to order any payment from Nebraska assets; secondly, the court in Thompson was in nowise confronted with a legislatively declared police power dealing with a situation in which inheres a general and vital public interest. The decision in Thompson does not rule this case.

At this point we note, but not as a controlling factor, that in many instances such as the present any judgment obtained is actually paid through liability insurance coverage. See the discussion in Brooks, supra (251 F.2d loc. cit. 43); also, Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876, 18 A.L.R.2d 537. As stated in the Brooks case: "* * * We do not base our decision in this case upon the availability of the liability insurance to protect the estate against loss. * * * However, we feel that the existence of the possibility that liability insurance may be available is an additional reason for upholding the jurisdiction of the Missouri court as to the nonresident executor." We need not blind ourselves to the practical aspects of such litigation as this. A judgment, if obtained here, may never be presented to the Nebraska courts.

■ Relators also suggest: that the statute (§ 506.210) "does not specifically provide that the executor, administrator * * * shall be subject to the jurisdiction of the courts of this state"; that the administrator is not included with the definitions of the term "person" in § 506.200; that "his lawful attorney and agent," as used in § 506.210(2) indicates that only the nonresident himself is referred to; and that § 506.210(3) constitutes merely an authorization for service on the nonresident himself. We shall not extend this opinion by a discussion of each of these objections in detail. The only applicable

use of the word "person" in § 506.210 is one which clearly refers only to the non-resident as the one using the highways, and it creates no ambiguity or conflict with § 506.200. On the other objections we must consider both the old section (§ 506.210, RSMo 1949, V.A.M.S.) and the section as amended (Cum.Supp.1957). We thus see that the legislature has inserted the words "his executor, administrator or other legal representative" in three places; namely, as an *agreement* that the executor, etc. *"shall be subject to the jurisdiction of the courts of this state"* (emphasis in these quotations is ours) in actions brought against the nonresident or *"his executor,"* etc., and that the use of the highways by the nonresident shall constitute an appointment by the nonresident, *"his executor, administrator"*, etc., of the Secretary of State as "his" lawful attorney and agent for service. Even a casual reading of the amended statute shows a clear legislative intent, fairly expressed, to subject the non-resident executor or administrator to jurisdiction and suit in Missouri, and to the service of process. These objections are technical and they do not impress us. Our statute varies somewhat in its wording from those of the other states whose statutes we have examined, but it has been recognized as sufficiently "similar" to make the decisions in those states strictly applicable. Brooks v. National Bank of Topeka, 8 Cir., 251 F.2d 37, 41. However, relators insist that our statutes are different, and defective, in one further respect; namely, that § 506.240, providing for the service of process, merely provides that service upon the Secretary of State "shall be sufficient service upon such nonresident." In other words, they insist that in failing to amend that section by adding the words "his executor, administrator or other legal representative", the legislature has left the whole system of jurisdiction and service defective; and therein, they point to the language in Harris v. Bates, 364 Mo. 1023,

270 S.W.2d 763, requiring that "actual notice" shall be prescribed by statute. The court there was considering an entirely different statute (§ 537.020) which was not even a part of our nonresident motorist law, and which has (in so far as there applicable) since been repealed (Cum.Supp. 1957.) That statute was a *survival* statute. Without providing for any notice whatever, paragraph 3 of then § 537.020 purported to authorize the appointment of a "representative" to be sued and to defend for a nonresident decedent. Since that time, by amendment of § 506.210, the legislature has answered the statement there made that neither § 537.020 nor § 506.210 "expressly subject to the jurisdiction of our courts the non-resident 'legal representative' * * *." When we consider the service section (§ 506.240) together with § 506.210, which establishes the jurisdiction, we readily see an intent not only to subject the legal representative to suit but to require that he be served with process. We shall not reject the whole system which the legislature so clearly meant to make effective, because of the failure specifically to amend § 506.240. Our view is supported by the wording of paragraph 2 of § 506.240 which requires the mailing of a notice "of such service" to the *defendant,* together with copies of the process and petition; one could hardly deny that the term "defendant," in view of the amendment of § 506.210, is broad enough to include the foreign administrator. The statutes provide for adequate "notice" to the administrator. This supposed defect was not held to invalidate the jurisdiction over a foreign executor under these very statutes in Brooks v. National Bank, 8 Cir., 251 F.2d 37. Relators say that the point was "not raised" or was "passed over" there. They are assuming much. The court there not only considered our statutes in detail but also the case of Harris v. Bates, supra. The point is disallowed.

■ The last point to be discussed is the contention that § 506.210 constitutes a "special law" in violation of § 40 of Art. 3 of the Missouri Constitution, V.A.M.S. The reasoning seems to be that it permits those persons who are injured by nonresident motorists to sue the nonresident's estate in Missouri, whereas no other persons having claims against such an estate may do so. The vast public interest inherent in the use of our highways and in the casualties flowing therefrom, certainly justifies the classification which permits suits against the nonresident motorist; in order to make this remedy fully effective the legislatures of Missouri and of sundry other states have extended the jurisdiction to cover the legal representatives of such motorists. Our statutes on this subject constitute one comprehensive system enacted for the relief of an evil directly affecting the public safety and welfare. It is not an arbitrary classification or a "special law." It is entirely beside the point to say that ordinary creditors of such an estate may not sue it in Missouri. No really applicable authority is cited, nor does any such objection appear ever to have been made in the cases discussed. See, generally, on the subjects of classification and of general and special laws: Carroll v. Missouri Pacific Ry., 88 Mo. 239, 246–247; State v. Swagerty, 203 Mo. 517, 102 S.W. 483, 10 L.R.A.,N.S., 601 (regulating automobile traffic); City of Springfield v. Stevens, Banc, 358 Mo. 699, 216 S.W.2d 450; Ballentine v. Nester, Banc, 350 Mo. 58, 164 S.W.2d 378. There certainly are "distinctive circumstances" here justifying the classification. State ex rel. Hollaway v. Knight, Banc, 323 Mo. 1241, 21 S.W.2d 767, 770.

The preliminary rule in prohibition will be discharged. It is so ordered.

All concur.